**LONE STAR LIFE INSURANCE COMPANY, Appellant,**

v.

**Joseph B. GRIFFIN, Appellee.**

**No. 8117.**

Court of Civil Appeals of Texas, Beaumont.

Oct. 26, 1978.

Rehearing Denied Nov. 16, 1978.

James J. Zeleskey, Lufkin, for appellant.

John Seale, Jasper, for appellee.

KEITH, Justice.

Defendant below appeals from an adverse judgment entered in a suit for disability benefits under a policy of insurance it had issued to the plaintiff. Upon the basis of the jury's answers to certain special issues, to be discussed hereinafter, the judgment awarded plaintiff the present or discounted value of all past due installments and those to accrue in the future, $34,-518.40, twelve percent penalty, $4,142.21, plus $9,900.00 in attorney's fees.[1]

Purporting to act under Art. 17.50(b), Business and Commerce Code, and Section 16, Art. 21.21 of the Insurance Code, each of such awards was trebled so that the total judgment against the defendant was in the sum of $132,181.83, with interest at nine percent per annum. Defendant has perfected the appeal with a myriad of points of error complaining of the basic award and of the action of the court in trebling the recovery under the cited statutes.

### 1. The Suit on the Policy

Legal and factual sufficiency points are urged against the jury finding in Special Issue No. 3 that plaintiff's accidental

---

1. The judgment provided for a remittitur of $4,500 if no appeal was perfected to the Court of Civil Appeals, and a remittitur of $2,700 if an appeal be to the Court of Civil Appeals but no application for the writ of error is filed with the Supreme Court, or a remittitur of $1,350 if an application for the writ is filed with the Supreme Court but is not granted.

injury on February 2, 1975, which resulted in his total disability was permanent. We will follow the accepted standards of review in our discussion of the evidentiary points. See *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

Plaintiff testified that on the night of February 2, 1975, as he was returning to his home from his farm, he passed by his drugstore. As was his custom, he entered the store to see if everything was normal (having been burglarized several times in the past). He smelled smoke which he found to be coming from the rear of his building. He testified that he emptied his fire extinguisher but his efforts were futile; that he was trying to get out of the building when an aerosol can exploded in his face; that he lost consciousness while upon the floor of the store near a door, and regained consciousness later in a hospital in Jasper.

Dr. Lee Popejoy testified as to his treatment of the plaintiff beginning at about two in the morning following the fire. He told of finding external burns on several parts of plaintiff's body but the most serious injury was to his lungs from the inhalation of smoke and fumes. Plaintiff was hospitalized for several weeks and testified that he was unable to do any work for several months thereafter.

Plaintiff operated a one-pharmacist store on the Courthouse Square in Newton and he secured the services of a retired pharmacist to help him for a while. He testified that he was unable to do the work of a pharmacist because of his difficulty in breathing and that while his health had improved, he still was unable to do his work in the store.

Dr. Popejoy testified positively and unequivocally that plaintiff's injuries were caused by the inhalation of the smoke and fumes which resulted in his total and permanent disability. Dr. Charles Anderson examined plaintiff for the defendant. His examination was more than two years after the accident and he found plaintiff to be only partially disabled, at the worst. Anderson attributed plaintiff's condition to his constant smoking of cigarettes which he admitted to have been addicted to for approximately fifty years. Anderson testified that plaintiff could do all of the work of a pharmacist but could not do any sustained heavy lifting.

Having condensed our lengthy factual record, we overrule defendant's first five points of error challenging the legal and factual sufficiency of the evidence to sustain the finding that the total disability was permanent.

### 2. Anticipatory Breach of the Insurance Contract

The policy of insurance provided that defendant would pay plaintiff $1,000 per month for sixty months for an accidental injury resulting in total disability and that it would pay $1,000 per month for twenty-four months for total disability resulting from sickness. Defendant paid several monthly payments of $1,000, noting on each check that the payment was for accidental injuries. Without any change in its medical information in its file—and for some undisclosed reason—the checks were coded to indicate that the disability was the result of sickness, not an accident.[2] The twenty-fourth payment was coded to indicate a sickness disability payment and a letter was written which we quote in the margin.[3] The check indicated it was the last payment.

Plaintiff alleged and now contends that the defendant, by sending the quoted letter, "repudiated the provisions of its policy dealing with payment of benefits for disability resulting from accident" so as to entitle him

---

2. The voucher attached to each check contained the code with "01" indicating payment for "Income for loss of time-accident" while code "02" was designated as a payment "Income for loss of time-sickness."

3. "We are enclosing a benefit check in the amount of $1,000.00 for the benefit period January 16, 1977 to February 15, 1977, which represents the maximum and final benefit for the aforementioned disability.

"If we can be of further assistance to you, please do not hesitate to contact us."

to recover not only the past due payments but "also the present cash value of the future payments which are unaccrued." Although defendant contended that there was no anticipatory breach, the parties stipulated that a discount rate of five percent would be applied (and it was so applied) to the unaccrued payments in the judgment.

In Special Issue No. 6, the jury found that the defendant "repudiated the provisions of its policy dealing with payments of benefits for disability resulting from accident after making payments for 24 months." [4]

Points six through ten, inclusive, attack the jury finding that the defendant repudiated its policy provisions upon the grounds that the evidence is legally and factually insufficient to sustain such finding. Actually, there are no disputed facts concerning such issue. Defendant wrote the letter; but, when plaintiff complained, it reopened the case, and had him examined by another doctor. Finally, after receiving Dr. Anderson's report, it tendered an additional $1,900 for disability accruing between the last payment and Anderson's examination. Insofar as there is a dispute in the record, we will follow the usual standards of review.

The parties cite and rely upon (or distinguish) the identical cases to support their opposing views. The latest expression on the subject which has come to our attention is the Supreme Court's opinion in *Republic Bankers Life Ins. Co. v. Jaeger*, 551 S.W.2d 30 (Tex.1976). The Court of Civil Appeals had affirmed a judgment for unaccrued monthly benefits with no allowance of a discount for present payment. (537 S.W.2d 503, 506) The Supreme Court found this to be error and the entire case was remanded to the trial court.

The Court also reaffirmed the correctness of the rule of law enunciated in *Universal Life & Accident Ins. Co. v. Sanders*, 129 Tex. 344, 102 S.W.2d 405 (1937). It is significant to note that the Supreme Court did not in any manner criticize or note its dissatisfaction with the basic holding of the Court of Civil Appeals, namely, that the letter quoted by the Court of Civil Appeals (537 S.W.2d at 505) "showed Republic's distinct, unequivocal and absolute intent to refuse to perform its obligation under the insurance contract" so as to constitute a repudiation of the policy.

In *Jaeger*, the insurer attempted to effect a unilateral rescission of the policy; here, defendant argues, it did no more than deny "that the facts as presented entitled the insured to recover under the policy." The difficulty with this argument is that sometime earlier, and for a reason even now unarticulated, the defendant had downgraded plaintiff's claim from an accidental injury causing total disability with a 60-month maximum payment to a sickness caused disability with a 24-month maximum payment period. This action was taken at a time when the insurer admittedly had no information (medically or otherwise) in its knowledge which would have authorized any change.

Defendant argues that under the doctrine of the *Sanders Case*, supra (102 S.W.2d at 407), there is no anticipatory breach shown when the insurer "merely denies liability or claims defenses under the terms of the policy" or refuses to pay "upon mistake or misunderstanding as to matters of fact or upon an erroneous construction of the disability clause." Considering the letter from its four corners and the condition of defendant's file at the time it was written, we are not impressed with this argument. We find no merit in the points under consideration and each is overruled. *Jaeger*, supra (537 S.W.2d at 506).

### 3. Treble Damages

■ Defendant has various points of error complaining of the action in overruling

---

**4.** This instruction accompanied the issue: "You are instructed that repudiation consists of such words or actions by a contracting party as indicate that such party is not going to perform its contract in the future."

Obviously, this instruction, which comes to us without criticism, was extracted from *Continental Casualty Co. v. Boerger*, 389 S.W.2d 566, 568 (Tex.Civ.App.—Waco 1965, writ dism'd).

its objections to Special Issues Nos. 10 and 11,[5] in not disregarding the jury's answers to these special issues, and in rendering judgment for treble damages. We will discuss only those points necessary in rendering our decision.

The jury, in answering Special Issues Nos. 10 and 11 affirmatively, went one step further than saying defendant repudiated or breached its insurance contract with plaintiff. It found that defendant's actions constituted unconscionable conduct and false and misleading representations as to the benefits provided by the policy. Accordingly, the trial court concluded that defendant had violated the Deceptive Trade Practices Act, *Tex.Bus. & Comm.Code Ann. § 17.50(a)(3), (4) (Supp.1978)*. We disagree with this conclusion and hold that as a matter of law defendant's actions did not constitute unconscionable conduct or false and misleading representations as defined in *Section 17.50(a)*.

Under the plain provisions of his insurance policy, plaintiff had certain rights and defendant had certain obligations. Plaintiff was entitled to be paid $1,000 per month by defendant for a maximum of sixty months while he was totally disabled because of an accidental injury. When plaintiff became disabled, defendant's obligation to pay was triggered, but defendant breached this obligation after making payments for only twenty-four months. This breach did not terminate defendant's obligations nor did it extinguish any of plaintiff's rights to be paid. He did not sustain any damage because of the action of the defendant. He still possessed the same contractual rights after defendant's breach as he had before and such rights were legally enforceable in a court of law. Defendant's breach authorized plaintiff to institute and maintain a suit to enforce his contractual rights and to recover the penalty, interest, and attorney's fees provided in the Insurance Code. There being no violation of *Section 17.50(a)*, the trial court erred in trebling the awards. Points fifteen and twenty-two are sustained.

■ The legislature has specifically provided for a penalty in addition to actual loss when a health and accident insurance company fails to pay benefits to a policyholder within thirty days after demand has been given—"twelve (12%) per cent damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss." *Tex.Ins.Code Ann. art. 3.62 (1963)*. Accordingly, plaintiff, upon a showing that he is entitled to recover under the terms and conditions of his policy, is entitled to the additional sum equal to twelve percent and reasonable attorney's fees as provided in *Article 3.62*. His recovery is based upon his contractual rights and its enhancement is under the provisions of the Insurance Code, not under DTPA.

■ The legislature has also provided remedies for injuries suffered as a result of unfair claim settlement practices in *Tex. Ins.Code Ann. art. 21.21-2 (Supp.1963–1977)*. This section, however, does not confer any private cause of action upon individuals injured by unfair settlement practices. Rather, the State Board of Insurance, upon finding a statutory violation, is empowered to stop such unlawful practices by means of a cease and desist order. *Russell v. Hartford Casualty Insurance Co.*, 548 S.W.2d 737, 742 (Tex.Civ.App.—Austin 1977, writ ref'd n. r. e.); *Alvarez v. West-*

---

5. *SPECIAL ISSUE NO. 10*

"Do you find from a preponderance of the evidence that the action of defendant in indicating on the benefit checks at first that such payments were for accident disability and then later that such payments were for sickness disability, constituted *false and misleading representations as to the benefits provided by the policy?*

"Answer: We do."

*SPECIAL ISSUE NO. 11*

"Do you find from a preponderance of the evidence that the action of defendant in indicating on the benefit checks at first that such payments were for accident disability and then later that such payments were for sickness disability, constituted unconscionable conduct?

"Answer: We do."

"You are instructed that the term 'unconscionable conduct' means such conduct as is shocking to the conscience."

*chester Fire Insurance Co.*, 562 S.W.2d 263, 264 (Tex.Civ.App.—San Antonio), reversed on other grounds (Tex.1978); *Tex.Ins.Code Ann. art. 21.21–2, § 6(a) (Supp.1963–1977).*

We have given careful consideration to two cases relied upon by plaintiff and find neither to be apt or controlling in this case. *Ceshker v. Bankers Commercial Life Ins. Co.*, 558 S.W.2d 102 (Tex.Civ.App.—Tyler 1977), writ ref'd n. r. e., *per curiam*, 568 S.W.2d 128 (Tex.1978), found the Supreme Court repudiating a holding that "One must be 'engaged in the business of insurance' to bring suit under art. 21.21, Tex.Ins.Code Ann." (558 S.W.2d at 104) Such a holding does not affect our decision in this case.

The other case, *Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 566 S.W.2d 724, 727 (Tex.Civ.App.—Austin 1978, application for writ pending), involved "an untrue statement made under circumstances that misled appellee regarding coverage, and appellee was injured thereby, having relied upon such statements."

Plaintiff makes no contention here that he relied upon any statements made by defendant or that he was misled to his damage. On the contrary, he sought a reconsideration of the decision that his benefit period had ended; the defendant had him examined by another doctor, it tendered an additional $1,900 benefits thereafter (which were refused by plaintiff); and, plaintiff instituted suit. Even if we assume the statement of defendant was untrue, plaintiff did not rely thereon and suffered no damage because of the statement.

On the other hand, defendant seeks solace from the holding in *Mobile County Mut. Ins. Co. v. Jewell*, 555 S.W.2d 903, 910–911 (Tex.Civ.App.—El Paso 1977), writ ref'd n. r. e., *per curiam*, 566 S.W.2d 295 (Tex.1978).

Although there is language in the opinion of the intermediate court which tends to support defendant's position, it must be admitted that, under the fact structure of the case, such comments constitute dictum. Nevertheless, to the extent that Justice Ward's analysis of the underlying statutes adds to this holding, it is adopted.[6]

■  We turn now to a discussion of defendant's complaints urged in its points twelve and thirteen, that the court had no statutory authority to treble the penalty of twelve percent and the reasonable attorney's fees authorized by *Art. 3.62, Insurance Code.* Plaintiff argues that *Art. 3.62* treats the penalty and attorney's fees as "damages". Again, we disagree.

*Tex.Ins.Code Ann. art. 21.21, § 16(b)(1) (Supp.1963–1977),* and *Tex.Bus. & Comm. Code Ann. § 17.50(b)(1) (Supp.1978)* both provide that when their provisions are violated, an insured or a consumer is entitled to "three times the amount of actual damages *plus* court costs and attorneys' fees reasonable in relation to the amount of work expended." (emphasis added)  *Art. 3.62* of the Insurance Code treats the twelve percent penalty and the attorney's fees distinctly from "the amount of loss." We sustain defendant's points twelve and thirteen.[7]

### 4.   Conclusion

Although the attorney's fees awarded may seem unusually large, no properly worded challenge has been arrayed against such primary finding of $9,900 in fees. Cf. *Republic National Life Ins. Co. v. Heyward*, 568 S.W.2d 879, 887 (Tex.Civ.App.—Eastland 1978, writ pending).

We have examined the remaining points of error brought forward and, finding no merit, each is overruled. We modify and

---

**6.** It is noted that while agreeing in part with the Court of Civil Appeals, the Supreme Court did *not* disagree with the remainder of the opinion as it sometimes does. See, e. g., *L.L.S. v. State of Texas*, 569 S.W.2d 495 (Tex.1978). Nor, did the Court withhold its approval of the language used by the intermediate court. See, e. g., *In re Martin A. Johnson, Official Court Reporter*, 569 S.W.2d 882 (Tex.1978).

**7.** Even if we were to agree with plaintiff's contention that defendant's contractual breach constituted a deceptive trade practice, a contention which we have rejected, the court would have erred in trebling the penalty award and attorney's fees, thereby treating such sums as if they were actual losses or damages.

affirm the trial court's judgment in this manner: The recovery of $34,518.40 as the present value of the unpaid payments which have matured and those to accrue in the future, the award of the twelve percent penalty upon such sum, plus $9,900 in attorney's fees are in all things affirmed. The judgment granting any other relief to the plaintiff is reversed and judgment here rendered denying any relief not herein specifically ordered.

Since we have affirmed the judgment in part and reversed in part, we tax the costs on appeal and in the court below equally against the parties. *Tex.R.Civ.P. 448; Coca Cola Bottling Co. v. Hobart*, 423 S.W.2d 118, 126 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n. r. e.); *Combined American Ins. Co. v. City of Hillsboro*, 421 S.W.2d 488, 491 (Tex.Civ.App.—Waco 1967, writ ref'd n. r. e.).

The judgment of the trial court is modified and, as modified, it is affirmed.