**Leroy MASSEY, Appellant,**

v.

**ARMCO STEEL COMPANY, et al., Appellees.**

**No. C2927.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 13, 1982.

Rehearing Denied June 3, 1982.

Norman W. O'Neil, Jr., Houston, for appellant.

Jan Steinberg, Brock C. Akers, Gay C. Brinson, Jr., Vinson & Elkins, Houston, for appellees.

Before MILLER, PRICE and JAMES, JJ.

MILLER, Justice.

This is an appeal from an order granting summary judgment and severance in favor of appellees. The trial court held appellant failed to plead a cause of action against appellees and, that therefore, no genuine issue of material fact existed to be adjudicated. We hold appellees were not proper parties to appellant's suit because the cause of action was barred by Article 8306 § 3, Tex.Rev.Civ.Stat.Ann. (Vernon 1967). We therefore agree no genuine issue of material facts existed, and we affirm the judgment of the trial court.

This appeal originated as a workers' compensation suit. Although some facts are in contention, those occurrences important to our resolution of the case are as follows. While in the employment of appellee Armco Steel Company, appellant suffered an industrial injury to his left hand which ultimately resulted in the amputation of his fifth finger. In connection with that injury, appellant alleged certain associated injuries to his left arm, shoulder and neck, and emotional trauma in the form of near-psychotic reactive depression. (It has been appellant's contention throughout this action the medical evidence of his injuries is uncontradicted.) Appellant timely filed a claim for worker's benefits with Armco Steel's compensation carrier, American General Fire & Casualty Co., who was also a defendant below. Appellant's claim was heard by the Texas Industrial Accident Board, which found him to be totally and permanently disabled and made an appropriate award.

American General invoked the provisions of Article 8307, § 5, Tex.Rev.Civ.Stat.Ann. (Vernon 1967), and appealed the IAB's award by filing suit in district court. Appellant answered and filed a counterclaim against American General, its employee James Sansing, and appellees Armco Steel and its agent Ray Lambright. In his first cause of action appellant asserted his right to recovery against American General under the workers' compensation insurance policy. Through his 2nd and 3rd causes of action appellant pled a claim against all cross-defendants for a breach of a duty of good faith and fair dealing owed under the contract of insurance and for intentional infliction of emotional distress. Appellees Armco Steel and Ray Lambright filed a Motion for Summary Judgment and severance on the basis that appellant's alleged cause of action against them was proscribed by the provisions of Art. 8306 § 3. No response was filed to appellees' motion. Upon a hearing, the Motion for Summary Judgment and severance was granted by the trial court, from which action appellant timely filed this appeal. At the time of this appeal, the workers' compensation suit and counterclaim for intentional torts against American General and Sansing remain pending in the original suit.

Appellant raises three points of error, claiming his second and third causes of action pled all the necessary elements of an intentional tort not barred by the exclusivity section of the Workers' Compensation Statute, Article 8306, § 3. Appellant maintains his causes of action sound in *tort*, instead of as a breach of the workers' compensation insurance *contract*. It is his assertion that appellee Armco Steel, through its agent, appellee Ray Lambright, controled the process of adjustment and settlement of appellant's worker's compensation claim with American General. Appellant alleges appellees read the uncontroverted medical evidence regarding his physical and psychological condition and made the conscious decision that he was not capable of withstanding extended settlement negotiations or a lengthy litigation period. He asserts appellees and American General made the further conscious decision to aggravate his physical and mental condition so as to force a settlement for less than he was entitled. This claim is evidenced, according to appellant, by American General's settlement-negotiation procedure and appellees' contention his injuries are limited to the loss of the finger, despite the uncontroverted medical evidence and the contrary finding of the IAB.

We disagree with appellant's contention that he pled a good cause of action against

appellees. We read the exclusivity section of the Workers' Compensation Act, Art. 8306, § 3, as barring appellant's suit against appellees. That statute provides in pertinent part:

The employees of a subscriber . . . shall have no right of action against their employer or against any agent, servant or employee of said employer for damages for personal injuries . . . but such employees and their representatives and beneficiaries shall look for compensation solely to the association, as the same is hereinafter provided for . . . No part of this Section is intended to lessen or alter the employees existing rights or cause of action either against his employer, its subscriber, or any third party.

■ Texas courts have interpreted this statute to mean two things important to this case. First, employers or their agents are not proper parties to a negligence suit arising out of a workers' compensation claim. An employee must find relief for his injuries against the insurance carrier through the Workers' Compensation Act, which provides the employee with a substitute cause of action. *Paradissis v. Royal Indemnity Co.*, 507 S.W.2d 526, 529 (Tex. 1974); *Grove Manufacturing Co. v. Cardinal Const. Co.*, 534 S.W.2d 153 (Tex.Civ.App.— Houston [14th Dist.] 1976, writ ref'd n. r. e.); *Jones v. Jeffreys*, 244 S.W.2d 924 (Tex. Civ.App.—Dallas 1951, writ ref'd).

■ Second, the Act does not bar an employee from recovering against his employer for intentional torts. *Reed Tool Co. v. Copelin*, 610 S.W.2d 736 (Tex.1980); *Aetna Ins. Co. v. Hart*, 315 S.W.2d 169 (Tex.Civ. App.—Houston 1958, writ ref'd n. r. e.). The Act cannot legislatively deprive an employee of his common-law right to recover for such wrongs. *Reed Tool, supra.*

If, however, an employee proceeds under the Act and files a claim for benefits, he is then prevented from asserting a common-law action for intentional torts. The filing of a claim for benefits waives an employee's right to proceed outside the Act. *Grove Manufacturing, supra; Heibel v. Bermann,* 407 S.W.2d 945 (Tex.Civ.App.—Houston 1966, no writ). An employee must make a choice between his statutory rights and those provided through the common-law.

■ In the instant case, appellant pursued his claim for workers' compensation benefits against American General, the insurer. This claim was not served from his counterclaim and represents a justiciable cause of action based on his industrial injury. Appellant's claim for intentional torts against appellees, however, is based on a cause of action *arising out of the handling of his workers' compensation claim.* He contends that appellees participated in bad faith settlement practices with American General, caused the suit in district court appealing the award of the IAB to be wrongly filed, and knowingly inflicted emotional distress on him by their involvement in refusing to settle the case and by protracting the litigation process. All of these claims, therefore, arise out of the workers' compensation relationship and are barred by Art. 8306 § 3. *Paradissis, supra.*

In our view, it is the insurance carrier that bears the ultimate responsibility for the handling and settlement of a workers' compensation claim. We therefore hold that under the provisions of Article 8306, § 3, appellees are not proper parties to a workers' compensation claim for an alleged cause of action arising out of the handling of that particular workers' compensation claim. In so holding, we do not decide here the duty or obligation of the insurance carrier in the handling of such claims. The issue of an *insurer's* duty of good faith settlement practice is not before us. We do decide, however, that an employer (Armco) and its agents (Lambright) do not occupy the same legal status as the compensation carrier under Article 8306, § 3. Accordingly, we hold that appellees are not proper parties to a suit for intentional torts *arising out of the handling of the compensation claim,* and that appellant has not alleged a cause of action against appellees based upon an implied duty of good faith and fair dealing in the handling of appellant's workers' compensation claim.

Judgment affirmed.

JAMES, Justice, dissenting.

I respectfully dissent from the opinion of the majority of this panel. In my opinion, appellant pled a cause of action against all original defendants in this suit, including appellees herein, for a breach of duty of good faith and fair dealing in insurance contracts. I therefore believe that an issue of material fact existed in the trial court below, and that the court erred in entering a summary judgment in favor of appellees. I would reverse the judgment of the trial court and remand the case for a trial on the merits.

This dissent is in complete agreement with the majority's presentation of the facts of this case. The majority however, reads this case strictly as a suit under the Workers' Compensation Act, Article 8307 § 5, Tex.Rev.Civ.Stat.Ann. (Vernon 1967), and that appellant's causes of action against appellees are barred by the exclusivity statute, Article 8306, § 3. Because the majority sees this action as arising out of the workers' compensation relationship, it finds it unnecessary to approach the important issues presented in appellant's brief. This dissent disagrees with the approach of the majority and analyzes this case from a different (but truer) direction. In that a cause of action for a breach of good faith and fair dealing exists in tort, *separate and distinct from a cause of action arising under the contract of insurance*, appellant's action in tort cannot be barred by the Workers' Compensation Act. Appellant therefore pled a good cause of action for alleged wrongs which arose out of, but were not covered by, the compensation insurance contract,[1] and appellees are proper parties to this suit.

### DUTY OF GOOD FAITH AND FAIR DEALING

Before considering the exclusivity of the Workers' Compensation Act, it is important to examine the current state of the law concerning a duty of good faith and fair dealing in insurance contracts. It is clear an implied covenant of good faith and fair dealing exists between an insurer and its insured in this state. This implied duty is found in the fundamentals of contract law and the common law of the State of Texas. A contractual agreement between two parties creates a relationship out of which grows a duty to use care. *Diamond v. Duncan*, 107 Tex. 256, 172 S.W. 1100 (1915). This contractual duty, when breached, may create an action in tort. *Montgomery Ward & Company v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947). The Supreme Court in *Scharrenbeck* stated:

> The relation which is essential to the existence of the duty to exercise care may arise through an express or implied contract *Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort*, as well as a breach of the contract. In such a case, the contract is mere inducement creating the state of things which furnishes the occasion of the tort. *In other words, the contract creates the relation out of which grows the duty to use care. Id.* at 510 (emphasis supplied).

This duty of care arising out of the contractual relationship is applicable to insurance contracts. *Burroughs v. Bunch*, 210 S.W.2d 211 (Tex.Civ.App.—El Paso 1948, writ ref'd). Insurance policies are contractual agreements and are governed by the general rules applicable to contract law. *American Standard Life Insurance Company v. Redford*, 337 S.W.2d 230 (Tex.Civ.App. —Austin 1960, writ ref'd n. r. e.). While actions for breach of an insurance contract may sound in contract, this state already

---

1. While, this dissent makes no comment on the merits of appellant's claim, Texas has long recognized a cause of action for the intentional infliction of emotional distress (mental anguish) unaccompanied by physical injury. *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Tex.1967); *Credit Plan Corp. of Houston v. Gentry*, 516 S.W.2d 471, 480 (Tex. Civ.App.—Houston [14th Dist.] ), *rev'd on other grounds*, 528 S.W.2d 571 (Tex.1975). Therefore, this claim is cognizable.

recognizes that such actions may be brought under the theory of tort.

In *Burroughs*, an action was brought for the failure of an insurance agent to obtain coverage or to notify his client of the lack thereof. The El Paso Court stated: "[I]t must be borne in mind that this is not an action on a contract of insurance. The breach of duty alleged was the failure of an insurance broker to use due diligence to obtain a policy." *Burroughs*, at 214–215. *See also: Powell v. Narried*, 463 S.W.2d 43 (Tex.Civ.App.—El Paso 1971, no writ), where the court, in citing *Burroughs*, held breaches of the contractual duty between an insurer and his insured are actionable in tort, not in contract. *Powell*, at 45.

Appellees argue that while a cause of action for breach of good faith and fair dealing in insurance contracts may exist, an action in tort is only available in instances of negligence. Appellees maintain that *Scharrenbeck* held such a cause of action is only available in negligence law. Because appellant pled an intentional tort, appellees assert that he has no cause of action arising from any breach of duty under the insurance contract.

I disagree. A close reading of *Scharrenbeck* reveals the Supreme Court was primarily concerned with the defendant's negligent failure to exercise his duty of good faith and fair dealing in the contractual relationship. Appellees overstate the Court's holding by contending that a cause of action for a breach of duty is "only relevant when negligence is at issue." First, while the holding in *Scharrenbeck* involved a negligence action, it should not be assumed that an action for an intentional tort would be inconsistent with the Court's ruling. Judge Brewster's opinion makes it clear the Supreme Court was concerned with the duty to perform a contract with care, skill, reasonable experience and faithfulness, and that a failure to do so would be actionable in tort. *Id.* 204 S.W.2d at 510. It is only logical to assume that if protection is to be afforded individuals for a negligent breach of a duty of good faith

and fair dealing in a contractual situation, then an *intentional* breach of the same duty would also be actionable. The courts of this state have always been more willing to hold intentional wrong-doers liable for their actions arising out of a duty than those persons who are merely negligent or strictly liable.

Second, appellees are incorrect in their assertion that the case law of this state does not provide for a recovery for an intentional tort arising out of a breach of duty imposed by a contract. In *Jack Criswell Lincoln Mercury, Inc. v. Tsichlis*, 549 S.W.2d 255 (Tex.Civ.App.—Beaumont 1977, no writ), the court, citing both *Burroughs* and *Scharrenbeck* favorably, found a breach of contractual duty was actionable in tort when it involved an *intentional* tort. "The breach was accomplished by outright deceit and dissembling on the part of the defendant and his vice-principles. Indeed, the evidence supporting plaintiff's claim for exemplary damages was so strong that had the jury returned an unfavorable answer, it would have been our duty on appeal to set it aside." *Id.* at 259. *See also: K.W.S. Manufacturing Co., Inc. v. McMahon*, 565 S.W.2d 368 (Tex.Civ.App.—Waco 1978, writ ref'd n. r. e.), where punitive damages were allowed for an intentional breach of a contractual duty where an independent tort arose out of that contract. "When a distinct, wilful tort is alleged and proved in connection with a suit upon a contract, one may recover punitive damages." *City Products Corp. v. Berman*, 610 S.W.2d 446, 450 (Tex.1981). Therefore, the rule in *Scharrenbeck* allowing for an action in tort for a breach of duty of good faith and fair dealing in contractual relations applies to intentional torts as well as to negligence actions.

### ACTION FOR BAD FAITH SETTLEMENT PRACTICES

In that Texas recognizes this duty of good faith and fair dealing in insurance contracts, and since an intentional breach thereof may sound in tort, it must now be

considered whether this common-law duty includes bad faith settlement practices. This question is one of first impression in Texas, but is not one without considerable authority for the proposition. Appellant has directed this court to 23 other states that have adopted a rule of an insurer's duty of good faith and fair dealing toward its insured.[2] The leading case in this area is *Gruenberg v. Aetna Insurance Company*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). That case dealt with a duty of an insurer to act fairly and in good faith when handling the claim of an insured. The California Supreme Court held that a common legal principle exists that "in every insurance contract there is an implied convenant of good faith and fair dealing." *Id.* 108 Cal.Rptr. at 486, 510 P.2d at 1038. This common principle leads to the general rule that where an insurer "fails to deal *fairly and in good faith* with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing." *Id.* 108 Cal.Rptr. at 485, 510 P.2d at 1037 (emphasis original).

This duty is seen as unconditional and independent of the performance of the con-tractual obligations. Therefore, a breach of the duty gives rise to an independent action in tort by a plaintiff. "[T]he existence of a contractual relationship does not insulate defendant insurers from liability that is 'ordinarily visited upon tortfeasors' for interfering with a property interest of the insured in receiving the benefits of the agreement." *Id.* 108 Cal.Rptr. at 488, 510 P.2d at 1040.

The *Gruenberg* decision has been closely followed in all states recognizing this duty of good faith and fair dealing of an insurer, and this author finds it reasoning compelling. The factors supporting this duty are numerous and convincing. Such public policy considerations as the unequal bargaining power of the parties to the contract, the special purpose of the insurance business to provide economic security in the event of loss instead of private economic gain, and the often disastrous economic effect of a bad faith refusal to pay benefits may cause an insured are paramount considerations behind recognizing this duty. *Grand Sheet Metal Products Company v. Protection Mutual Insurance Company*, 34 Conn.Supp. 46, 375 A.2d 428, 430 (1977).

I do not attempt here to suggest the standard of review for a claim of bad faith

2. To the best of this author's knowledge, the following represent the states that have upheld a duty of good faith and fair dealing in settlement practices between an insurer and insured:

Alaska: *United Services Automobile Ass'n v. Werley*, 526 P.2d 28 (Alaska 1974); Arizona: *Noble v. National American Life Ins. Co.*, 128 Ariz. 188, 624 P.2d 866 (1981); California: *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973); Connecticut: *Grand Sheet Metal Products Co. v. Protection Mutual Ins. Co.*, 34 Conn.Supp. 46, 375 A.2d 428 (1977); Florida: *Escambia Treating Co. v. Aetna Casualty & Surety Co.*, 421 F.Supp. 1367 (N.D.Fla.1976); Idaho: *Linscott v. Rainier Nat'l Life Ins. Co.*, 100 Idaho 854, 606 P.2d 958 (1980); Illinois: *Eckenrode v. Life of America Ins. Co.*, 470 F.2d 1 (7th Cir. 1972); Indiana: *Vernon Fire & Casualty Co. v. Sharp*, 264 Ind. 599, 349 N.E.2d 173 (1976); Iowa: *Amsden v. Grinnell Mutual Reinsurance Co.*, 203 N.W.2d 252 (Iowa 1972); Maine: *Gibson v. National Ben Franklin Ins. Co.*, 387 A.2d 220 (Me.1978); Montana: *Hayes v. Aetna Fire Un-*derwriters, 609 P.2d 257 (Mont.1980); Nevada: *United States Fidelity & Guaranty Co. v. Peterson*, 91 Nev. 617, 540 P.2d 1070 (1975); New Hampshire: *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 392 A.2d 576 (1978); New York: *Flamm v. Bethlehem Steel Co.*, 18 Misc.2d 154, 185 N.Y.S.2d 136 (Sup.Ct.1959), *aff'd*, 10 A.D.2d 881, 202 N.Y.S.2d 222 (1960); North Dakota: *Corwin Chrysler-Plymouth, Inc. v. Westchester Fire Ins. Co.*, 279 N.W.2d 638 (N.D.1979); Ohio: *Kirk v. Safeco Ins. Co.*, 28 Ohio Misc. 44, 273 N.E.2d 919 (Ct. of Common Pleas 1970); Oklahoma: *Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okl.1978); Oregon: *Santilli v. State Farm Life Ins. Co.*, 278 Or. 53, 562 P.2d 965 (1977); Pennsylvania: *Reed v. Hartford Accident & Indemnity Co.*, 367 F.Supp. 134 (E.D.Pa.1973); Rhode Island: *Bibeault v. Hanover Ins. Co.*, 417 A.2d 313 (R.I.1980); South Carolina: *Robertsen v. State Farm Mutual Auto Ins. Co.*, 464 F.Supp. 876 (D.S.C.1979); Virginia: *Carter v. Boston Old Colony Ins. Co.*, 581 F.2d 1123 (4th Cir. 1978); Wisconsin: *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978).

settlement practices. This will be a process of development through our state's judicial system incorporating elements of tort and contract law that are uniquely Texan. The many different states that have adopted a cause of action in tort for bad faith settlement have established standards that are *sui generis* to their own situations. Some common elements, however, do transcend the geopolitical differences. First, a claimant would need to establish the duty arising out of the contractual relationship, whether the connection be direct or as a third-party beneficiary. Second, he would have to show an absence of a reasonable basis for the insurer's denial/delay of benefits. Implicit in any standard would be a showing of the defendant-insurer's knowledge or reckless disregard of the lack of a reasonable basis for the practice. "Breach of duty" and "bad faith" imply by necessity an intentional act, as appellant asserts on this appeal. Finally, any test would need as its basis an objective standard for review. *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978). Therefore, there is no intent in the development of this area of law to emasculate insurance carriers to the point they cannot challange debatable and unfounded claims.

In proposing this private cause of action, this dissent is not unmindful of the Unfair Claim Settlement Practices Act, Tex.Ins. Code Ann. art. 21.21–2 (Vernon 1981), and the case law interpreting its provisions. Section 6(a) of Article 21.21–2 has been interpreted by some of the appellate courts of this state as not conferring a private cause of action upon complainants injured by "unfair settlement practices."

> Article 21.21–2 provides that no insurer shall engage in unfair claim settlement practices.... Article 21.21–2 does *not* confer a private cause of action upon individuals injured by those unfair claim practices, but instead the State Board of Insurance, upon finding an insurer in violation of the Act, is empowered to issue a cease and desist order to the insurer directing it to stop such unlawful practices.

*Russell v. Hartford Casualty Insurance Co.*, 548 S.W.2d 737, 742 (Tex.Civ.App.—Austin 1977, writ ref'd n. r. e.); *Lone Star Life Insurance Co. v. Griffin*, 574 S.W.2d 576 (Tex.Civ.App.—Beaumont 1978, writ ref'd n. r. e.).

I do not believe the cause of action proposed by this dissent is in conflict with Article 21.21–2 or the case law. In the two cases cited above, complainants attempted to bring private actions *under* the provisions of the Insurance Code. Appellant has not attempted here to raise a claim under Article 21.21–2, but is pursuing a private cause of action based on the *tort and contract common-law* of this state. Both the *Russell* and *Griffin* opinions are limited to proceedings under the Act for *statutory* violations. *Russell*, at 742; *Griffin*, at 580. Nowhere does Article 21.21–2 attempt to exclude a common-law right. *See: Humphreys v. Fort Worth Lloyds*, 617 S.W.2d 788 (Tex.Civ.App.—Amarillo 1981, no writ), where the court, writing in dicta, concluded that the legislature did not intent Article 21.21–2 to foreclose a private cause of action for bad faith settlement practices for acts which are seen as unfair or deceptive outside the provisions of the Act. *Id.* at 790.

In addition, in *Alvarez v. Westchester Fire Ins. Co.*, 562 S.W.2d 263 (Tex.Civ.App. —San Antonio), *rev'd on other grounds*, 576 S.W.2d 771 (Tex.1978), the San Antonio Court of Civil Appeals held Article 21.21–2 has no application to actions involving workers' compensation situations. Therefore, as it relates to this specific case, Article 21.21–2 places no bar on a *common-law cause of action* for bad faith settlement practices.

### TEXAS WORKERS COMPENSATION AND BAD FAITH SETTLEMENT

The fact that this situation involved a claim for workers' compensation benefits makes no difference in the application of a duty of good faith and fair dealing to this case. Article 8306, § 3, and the accompanying case law, allow an employee to sue his

employer or his agents (and by implication, the carrier of the policy) for intentional wrongs. As stated in the majority opinion, while the Act cannot deprive an employee of his common-law right to sue for intentional wrongs, once an employee proceeds under the statute, he waives his right to find relief for intentional wrongs sustained in the course of the employment relationship. *Reed Tool Co. v. Copelin*, 610 S.W.2d 736 (Tex.1981).

This rule, however, should not be seen as prohibiting a separate suit for intentional wrongs that may have arisen because of the employment relationship, but are separate and distinct from the industrial injury so as to not find solace in the Workers' Compensation Act. The state legislature did not intend to bar recovery for intentional torts under Article 8306, § 3. It was the legislature's design that when an intentional injury was "sustained in the course of [the] employment," a choice be made whether to proceed in common law or under the Act. *Reed Tool*, 610 S.W.2d at 739. The legislature, however, made no restriction on intentional wrongs which occur as a result of the working relationship, but arise separately and subsequent to the employment situation.

A useful analogy can be drawn from the *Reed Tool* case. There, a wife sought to maintain a *separate* action for the intentional wrongs of her husband's employer which resulted in her loss of her husband's consortium. The trial court entered a summary judgment on the basis that her suit was barred by her husband's action under the Workers' Compensation Act. In affirming this Court's reversal of the summary judgment, the Supreme Court of Texas held that even though the wife's suit was derivative from her husband's action, her claim for an intentional tort was not barred by the Act. The court saw the wife's action for negligence and gross negligence as barred by her husband's workers' compensation agreement. But her action for intentional impairment was a separate property right that could not be destroyed by the provisions of the Act. *Id.* at 740.

Recognizing that a controlling basis for the court's holding in *Reed Tool* rested on a wife's separate property interest found under the Family Code, the logic of the opinion can and should be extended to the instant situation. As mentioned above, this state recognizes the importance of the common-law right to sue for an intentional wrong. *Aetna Insurance Company v. Hart, supra.* If the exclusivity of Article 8306, § 3 does not bar an action for intentional torts brought in place of the provisions of the Act, nor an action based on the separate property interests of another even when the provisions of the Act are invoked, then a separate action for intentional wrongs arising because of the employment relationship, *but separate and distinct from the industrial injury*, should be recognized. Otherwise, an employer is given a *carte blanche* to intentionally inflict both physical and emotional damage on an employee once the injury occurs and the option to proceed under the Act has been made. I do not believe this was within the legislative purpose behind the Workers' Compensation Act.

I do believe, however, the majority is unnecessarily broad in its interpretation of the Workers' Compensation Act and the application of its provisions to the facts of this case. The majority states that appellees are not proper parties to this suit because appellant's action "arises out of the handling of the compensation claim." A review of the applicable case law, however, fails to reveal authority to support the majority's expansion of the coverage of the Act. In *Paradissis v. Royal Indemnity Co.*, 507 S.W.2d 526 (Tex.1974), referred to by the majority, the Supreme Court stated that the Act "is intended to and does provide an exclusive system governing compensation to employees for injuries *arising from their employment.*" *Id.* at 529 (emphasis supplied). In *Woolsey v. Panhandle Refining Co.*, 131 Tex. 449, 116 S.W.2d 675 (1938), the court stated the purpose of the Act is to provide relief for "personal injuries sustained by an employee *in the course of his employment.*" *Id.* at 676 (emphasis supplied). Article 8306, § 20 states that:

(t)he terms "Injury" and "Personal Injury" shall also be construed to mean and include "Occupational Diseases" ...... such term(s) shall be construed to mean any disease *arising out of and in the course of* employment which causes damage or harm to the physical structure of the body ... (emphasis supplied).

Without question, the case law of this state has held the provisions of the Act only apply in situations where the injury is *sustained in, occurs in, or arises out of the course of the employment. Reed Tool, supra; Paradissis, supra; Woolsey, supra.* Yet, the majority has now held the Act applies (and therefore bars appellant's action) not only to injuries not occurring in the course of the employment, *but also to those sustained as a result of the handling of the claim by the insurance carrier.* This is not the status of the law, and the majority cannot stretch the Act to cover alleged injuries occurring because of the prior employment relationship but separate and distinct from the injury sustained in the course of the employment. Appellant's alleged injury is not covered by the Act, and the majority cannot make it so by rewriting the law.

Of the 23 states that have adopted an action for bad faith settlement practices in insurance contracts, seven have included workers' compensation situations.[3] The most recent case involving a statute similar to the Texas Act is *Hayes v. Aetna Fire Underwriters,* 609 P.2d 257 (Mont.1980). In *Hayes,* a worker who sustained an injury covered by the Montana Workers' Compensation Act asserted a separate claim for damages alleging the insurer and adjuster committed intentional torts and acted in bad faith in adjusting and processing the workers' compensation claim. The Montana Supreme Court vacated the trial court's dismissal under the exclusivity provision of the statute, stating two reasons for recognizing the separate cause of action. First, the Court held a separate right of action should be recognized because the claimed tortious conduct does not arise out of the original employment relationship or the resulting injury. "It [the conduct] occurs after employment and arises out of the employee's relationship with the insurance carrier after the employment relationship has been terminated. *It is predicated on an act after the injury and during the settlement of the claim." Id.* at 261 (emphasis supplied).

Second, the Montana Workers' Compensation Statute, like the Texas Act (Article 8306, §§ 5, 18), contains a penalty provision for situations where employers fail to pay benefits or exercise unreasonable delay in such payments. These provisions usually apply when the misconduct of the employer or the insurer is not necessarily intentional, such as mismanagement, delay or deficient administrative procedures. If a recovery is provided for these practices, then it appears to this author that "[w]here the wrong is intentional, malicious and calculated to cause intimidation, ... a claimant is entitled to another remedy." *Hayes,* 609 P.2d at 262. As further stated by the Montana Supreme Court:

The Compensation Act should not be a "shield" which will insulate those who would engage in intentional wrongdoing in the settlement and investigation of workers' claims. No one should be allowed intentionally and tortiously to cut off a claimant unilaterally for whatever purpose they chose and then hide behind workers' compensation exclusivity in assurance that the only retribution will come in the form of a compensation penalty paid for by society.

The Supreme Court of Wisconsin, dealing with a similar exclusivity provision in its

---

**3.** Alaska: *Stafford v. Westchester Fire Ins. Co.,* 526 P.2d 37 (Alaska 1974); California: *Unruh v. Truck Insurance Exchange,* 7 Cal.3d 616, 102 Cal.Rptr. 815, 498 P.2d 1063 (Cal.1972); Maine: *Gibson v. National Ben Franklin Ins. Co.,* 387 A.2d 220 (Me.1978); Montana: *Hayes v. Aetna Fire Underwriters,* 609 P.2d 257 (Mont.1980);

New York: *Flamm v. Bethlehem Steel Co.,* 18 Misc.2d 154, 185 N.Y.S.2d 136 (Sup.Ct.1959); Pennsylvania: *Reed v. Hartford Accident & Indemnity Co.,* 367 F.Supp. 134 (E.D.Pa.1973); Wisconsin: *Coleman v. American Universal Ins. Co.,* 86 Wis.2d 615, 273 N.W.2d 220 (1979).

own workers' compensation act, has also upheld a cause of action against an employer or insurer for intentional injuries arising out of, but independent from, the workers' compensation relationship. *Coleman v. American Universal Ins. Co.*, 86 Wis.2d 615, 273 N.W.2d 220 (1979). The Supreme Court, in citing to Larson's treatise on *Workmen's Compensation Law* (1978), rejected "as spurious" any arguments that a second injury sustained as a consequence to the intentional act of the insurer or employer should be considered as merely an extension or aggravation of the work related injury. *Id.* 273 N.W.2d at 223.

The injury for which remedy is sought in the instant case is the emotional distress and other harm caused by the defendants' intentional acts during the investigation and during the course of payment of the claim. This claimed injury was distinct in time and place from the original on-the-job physical injury which was subject to the Compensation Act. The injury for which recovery is sought in the present actions did not occur while the plaintiff was employed or while he was performing services growing out and incident to his employment. As the plaintiff repeatedly and correctly stressed in his brief, this action is based not on the original work-related injury but or a second and separate injury resulting from the intentional acts of the insurer and its agents while investigating and paying the claim. The Act does not cover the alleged injury, and the exclusivity provision does not bar the claim.

The fact that *Hayes* and *Coleman* were primarily concerned with providing a cause of action against an insurer in no way limits their authority in this case. The companion case of *Hayes, Vigue v. Evans Products Co.*, 608 P.2d 488 (Mont.1980), involved an identical situation where the injured employee brought suit against both his employer and its insurer for intentional torts committed in the processing and handling of the workers' compensation claim. Citing to its reasoning in *Hayes*, the Montana Supreme Court held the exclusivity section of its Act could not bar a cause of action for the

duress, fraud, conversion and bad faith of the *employer* participating in the processing of the claim. *See: Stafford v. Westchester Fire Ins. Co.*, 526 P.2d 37, 43 (Alaska 1974), *overruled on other grounds, Cooper v. Argonaut Ins. Companies*, 556 P.2d 525 (Alaska 1976), which held that both employers and insurers could be liable for the intentional tortious conduct of bad faith settlement practices. *See also: Marvasi v. Shorty*, 70 F.R.D. 14, 18 (E.D.Pa.1976), where an employee's action against his employer for the intentional violation of his civil rights was not barred by the exclusivity section of the Pennsylvania Workmen's Compensation Act.

Since the complained of injury in the instant case is not covered by the Act, Article 8306, § 3 cannot bar appellant's action against appellees or American General and Sansing. *Vigue, Hayes* and *Coleman, supra.* If a conspiratorial relationship existed between American General and appellees in processing this workers' compensation claim, appellant should be given the opportunity to plead his case. It would be naive to believe that in all situations involving a breach of duty of good faith and fair dealing in insurance contracts the wrong-doing has never occurred with the knowledge, consent or active participation of employers. This is especially true in workers' compensation situations where employers usually exercise considerable authority in the settlement practices of their insurers.

I agree with the logic of the above cited authority and support its attempt to correct this inequity in the law. Appellant does not attempt to "have his cake and eat it too"; rather, he is attempting to recover for claimed intentional wrongs that are separate and distinct from the industrial injury. If his claims do hold merit, then appellees should not be able to hide behind the "coat-tails" of the Workers' Compensation Act.

I therefore dissent from the majority opinion. I would reverse the judgment of the trial court and allow appellant the opportunity to plead a cause of action for a

separate intentional wrong against the employer and the insurer.