

# The Attorney General of Texas

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
15/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

October 24, 1984

Honorable George Pierce
Chairman
Committee on Urban Affairs
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No. JM-218

Re: Waiver of deductible for comprehensive automobile insurance coverage when the insured agrees to have windshield repaired rather than replaced

Dear Representative Pierce:

You advise that

> [o]ver the past several years, insurance companies have offered to waive comprehensive deductibles if the insured will have a damaged automobile windshield repaired rather than replaced.

You ask whether this practice violates chapters 5 and 21 of the Texas Insurance Code or the Deceptive Trade Practices – Consumer Protection Act.

When and how individual offers are made determines whether or not the practice constitutes a violation of these acts; therefore, our discussion covers the extremes of <u>potential</u> violations. We conclude that if such offers were made <u>before</u> a covered loss occurred, the practice would violate article 5.06(1) of the Insurance Code. Similarly, if the practice of waiving the comprehensive deductibles in settlement <u>after</u> a loss occurred were prevalent enough to constitute a trade usage or custom, the practice would violate article 5.06(1). Moreover, depending on the facts in a particular case, because "repair" and "replace" in an insurance policy mean the restoration of the vehicle to substantially the same condition it was in immediately prior to the damaging event, the practice could very likely violate the settlement provisions of the Insurance Code and the Deceptive Trade Practices – Consumer Protection Act.

Article 5.05(1) of the Insurance Code provides as follows:

> In addition to the duty of approving classifications and rates, the [State] Board [of Insurance] shall prescribe certificates in lieu of

> a policy and policy forms for each kind of
> insurance <u>uniform in all respects except as
> necessitated by the different plans on which the
> various kinds of insurers operate, and no insurer
> shall thereafter use any other form in writing
> automobile insurance in this State</u>; provided,
> however, that any insurer may use any form of
> endorsement appropriate to its plan of operation,
> provided such endorsement shall be first submitted
> to and approved by the Board; <u>and any contract or
> agreement not written into the application and
> policy shall be void and of no effect and in
> violation of the provisions of this subchapter,
> and shall be sufficient cause for revocation of
> license of such insurer to write automobile
> insurance within this State.</u> (Emphasis added).

Unless a statute or public policy prohibits it, the parties to an insurance contract may agree to any provision they wish. <u>Hatch v. Turner</u>, 193 S.W.2d 668 (Tex. 1946); Attorney General Opinion JM-5 (1983). Article 5.06(1), however, prevents insurers from entering into "any contract or agreement" not written into an approved application and policy. <u>Springfield v. Aetna Casualty & Surety Insurance Co.</u>, 620 S.W.2d 557 (Tex. 1981).

A contract of insurance is an undertaking by the insurer to protect the insured from loss arising from particular risks. <u>McBroome-Bennett Plumbing, Inc. v. Villa France, Inc.</u>, 515 S.W.2d 32 (Tex. Civ. App. - Dallas 1974, writ ref'd n.r.e.). After a loss occurs, there is no longer a risk of loss; thus, agreements settling the loss, which do not change the risk covered, are not insurance contracts. Such agreements are independent, <u>settlement</u> contracts. See <u>Lone Star Life Insurance Co. v. Griffin</u>, 574 S.W.2d 576 (Tex. Civ. App. - Beaumont 1978, writ ref'd n.r.e.); <u>Home Insurance Co. of New York v. Shepherd</u>, 63 S.W.2d 758 (Tex. Civ. App. - Waco 1933, writ ref'd); <u>Corsicana Warehouse Co. v. North River Insurance Co.</u>, 288 S.W. 137 (Tex. Comm'n App. 1926, judgmt adopted). Therefore, agreements to waive comprehensive deductibles if the insured agrees to repair rather than replace a damaged windshield require different treatment when made before rather than after a loss occurs.

Although the policy forms containing the comprehensive deductibles have been approved by the Board, the insurers may not "waive" such provisions from the policy before a loss occurs without violating article 5.06(1). Waiver, as a term of art in contract law, is essentially unilateral in character. See <u>Bluebonnet Oil & Gas Co. v. Panuco Oil Leases, Inc.</u>, 323 S.W.2d 334 (Tex. Civ. App. - San Antonio 1959, writ ref'd n.r.e.); <u>Reserve Life Insurance Co. v. Martin</u>, 312 S.W.2d 321 (Tex. Civ. App. - Fort Worth 1958, writ ref'd

n.r.e.). In contrast, a waiver of the comprehensive deductible after the loss, when the insured agrees in return to have the glass repaired rather than replaced, is a bilateral exchange of promises. Each party relinquishes a right to which he would otherwise be entitled. The market value of an automobile with a repaired windshield is not necessarily the same as that of an automobile with a new windshield, Northwestern National Insurance Co. v. Cope, 448 S.W.2d 717, 719 (Tex. Civ. App. - Corpus Christi 1969, no writ); thus the insured gives up the value of a new windshield in return for not having to pay the deductible amount. Such an agreement extinguishes one contract obligation by a mutual acceptance of new promises. See, e.g., Hyatt Cheek Builders - Engineers Co. v. Board of Regents of the University of Texas System, 607 S.W.2d 258 (Tex. Civ. App. - Texarkana 1980, writ dism'd); Hidalgo County v. Pate, 443 S.W.2d 80 (Tex. Civ. App. - Corpus Christi 1969, writ ref'd n.r.e.).

Such an agreement, when made before a loss occurs, operates to modify the insurance contract and becomes part of the contract. See Southern Insurance Co. v. Federal Service Finance Corp. of Texas, 370 S.W.2d 24 (Tex. Civ. App. - Austin 1963, error dism'd). As indicated, article 5.06(1) prohibits agreements or contracts not written into an approved policy or application not otherwise approved by the Board.

Similarly, if the practice of waiving the comprehensive deductibles in settlement after a loss occurs constitutes trade usage or custom, the practice would violate article 5.06(1) of the Insurance Code. Establishing a custom and usage that would be included in a contract by implication requires a showing that it is a custom generally known to both parties or that the parties contracted with reference thereto. Fry v. Guillote, 577 S.W.2d 346, 349 (Tex. Civ. App. - Houston [14th Dist.] 1979, writ ref'd n.r.e.); Flagg Realtors, Inc. v. Harvel, 509 S.W.2d 885, 889 (Tex. Civ. App. - Amarillo 1974, writ ref'd n.r.e.). Including such an agreement by implication through trade usage would violate article 5.06(1) as a contract provision not written into an approved policy form or not otherwise approved by the Board. The actual existence of trade usage depends upon facts, see Fry v. Guillote, supra, which we cannot decide in the opinion process.

You also ask whether the practice in question violates chapters 5 and 21 of the Insurance Code. The specific contention has been made that the practice violates articles 5.08 and 5.09.

Article 5.08 prohibits offering special inducements "not specified in the policy contract, for the purpose of writing the insurance of any insured." (Emphasis added). Article 5.09 requires that all insureds be treated equally and refers to practices engaged in "as an inducement to insured." If an insurer expressly offers the option of waiving comprehensive deductibles before a loss occurs or if

such a pre-loss agreement is implied in the insurance contract from trade usage, depending upon the facts in a particular case, it could operate as an "inducement" to insure with a particular insurer. Nevertheless, articles 5.08 and 5.09 do not apply to non-"customary" settlement offers made only after a particular loss occurs in individual cases; they apply to inducements to enter into insurance contracts.

Similarly, article 21.21 of the Insurance Code focuses on unfair practices relating to an insurance contract, but not on unfair practices relating only to settlement of claims. See McKnight v. Ideal Mutual Insurance Co. v. Green, 534 F. Supp. 362 (N.D. Tex. 1982). For example, section 4(7) of article 21.21 reaches unfair discrimination in any terms or conditions of the insurance contract. Section 4(8) prohibits direct or indirect inducements for making contracts of insurance unless such are plainly expressed in the contract.

Although section 4(1) reaches misrepresentations made for the purpose of "inducing or tending to induce such policyholder to lapse, forfeit, or surrender his insurance," it still refers to the existence or non-existence of the insurance contract itself and not to settlement of claims which are admittedly covered by an existing insurance contract. Thus, the distinction discussed above, between (1) practices engaged in before a loss occurs or implied in the insurance contract from trade usage, and (2) practices engaged in for settling a claim that the insurance contract admittedly covers, also applies under article 21.21 of the Insurance Code.

On the other hand, article 21.21-2 of the Insurance Code, covering unfair claim settlement practices, was specifically intended to reach unfair practices engaged in after a particular loss occurs. See McKnight v. Ideal Mutual Insurance Co. v. Green, supra; Lone Star Life Insurance Co. v. Griffin, supra. Section 2 of article 21.21-2 provides, in part:

> Any of the following acts by an insurer, if committed without cause and performed with such frequency as determined by the State Board of Insurance as provided for in this Act, shall constitute unfair claim settlement practices:
>
> (a) Knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue;
>
> . . . .

> (g) Committing other actions which the State Board of Insurance has defined, by regulations adopted pursuant to the rule-making authority granted it by this Act, as unfair claim settlement practices.

The Board could find, depending upon the facts in a particular case, that the waiver of a comprehensive deductible in return for an agreement to repair rather than replace an automobile windshield involved a misrepresentation prohibited by section 2(a) of article 21.21-2. The words "repair" and "replace" in an insurance policy mean the restoration of the vehicle to substantially the same condition it was in immediately prior to the damaging event. Northwestern National Insurance Company v. Cope, supra, at 719. If repairs left the market value of the vehicle significantly lower than its pre-accident value, it would not be restored to 'substantially the same condition." Id.

Without, however, a Board regulation defining the repair offer as an unfair claim settlement practice, the practice does not constitute an unfair practice as a matter of law. Section 2(g) of article 21.21-2 indicates that the Board, adopting regulations pursuant to the rule-making authority granted by section 8 of article 21.21-2, may define other actions as unfair claim settlement practices. See also V.T.C.S. art. 6252-13a, §11 (providing for petition by any interested person requesting the adoption of a rule).

You also ask whether the practice in question constitutes a violation of the Deceptive Trade Practices - Consumer Protection Act. Tex. Bus. & Comm. Code §17.41 et seq. [hereinafter DTPA]. Insofar as the practice violates article 21.21 of the Insurance Code, it would constitute a violation of the DTPA. Royal Globe Insurance Co. v. Bar Consultants, Inc., 577 S.W.2d 688 (Tex. 1979). A violation of the DTPA necessarily depends upon the facts in a particular case. See, e.g., Royal Globe Insurance Co., supra.

Article 21.21-2, prohibiting an insurer from engaging in unfair claim settlement practices, does not confer a private cause of action; rather the Board is empowered by article 21.21-2 to issue a cease and desist order directing an offending insurer to stop such unlawful practices. McKnight v. Ideal Mutual Insurance Co. v. Green, supra; Humphreys v. Fort Worth Lloyds, 617 S.W.2d 788 (Tex. Civ. App. - Amarillo 1981, no writ); Lone Star Life Insurance Co. v. Griffin, supra; Russell v. Hartford Casualty Insurance Co., 548 S.W.2d 737 (Tex. Civ. App. - Austin 1977, writ ref'd n.r.e). Although misrepresentations about the amount due on a specific claim may constitute a breach of contract or a violation of another statute, such misrepresentations do not violate the DTPA when they do not terminate the insurer's obligation nor extinguish any of the insured's rights. Lone Star Life Insurance Co. v. Griffin, supra; see also

Juarez v. Bank of Austin, 659 S.W.2d 139 (Tex. App. - Austin 1983, no writ).

### S U M M A R Y

If insurers offer to waive comprehensive deductibles in return for an agreement to repair rather than replace a damaged windshield before a covered loss occurs, or if such offers are prevalent enough to be implied in the insurance contract by trade usage, the practice would violate article 5.06(1) of the Insurance Code. Depending upon the facts in a particular case, such express pre-loss offers and offers implied from trade usage could also violate articles 5.08, 5.09, and 21.21 of the Insurance Code.

Although article 21.21-2 of the Insurance Code specifically reaches post-loss practices, without a State Board of Insurance regulation prohibiting the practice in question, the practice does not constitute an unfair claim settlement practice as a matter of law.

The Deceptive Trade Practices - Consumer Protection Act applies to practices coming within article 21.21 of the Insurance Code but not to practices prohibited by article 21.21-2.

Very truly yours

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General

p. 982

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
David Brooks
Colin Carl
Susan Garrison
Deborah Loomis
Jim Moellinger
Nancy Sutton