Christian, J.
The plaintiff in error (the Manhattan Fire Insurance Company) seeks to avoid the obligation, of its policy issued to the defendant in error upon two grounds:
First, that the building insured stood upon leased ground, but was not so represented to the company,, and not so expressed in the policy.
Second, that at the time of the insurance, the house was encumbered by a deed of trust, which fact was. not represented to the company, and not expressed in the policy.
The condition of the policy upon which this defenceis based is as follows:
“ iv. If the interest of the assured in the property be any other than the entire unconditional and sole ownership of the property for the use and benefit of' the assured, or if the buildings insured stand on leased, ground, it must be so represented to the company, and *391 so expressed in the written part of this policy, otherwise the policy shall be void.”
Evidence was offered to prove that the general agent of the company, who issued this policy to defendants in error, knew that the building insured stood on leased ground at the time he issued the policy. There was a motion to exclude this evidence trom the jury, which was overruled by the court, and was the subject of a bill of exceptions, which set forth the evidence offered and admitted by the court as follows:
Be it remembered, that after the jury were sworn to try the issue joined in this cause, the plaintiffs to maintain the said issue on their part, after having offered in evidence to the jury (1) the policy, (2) the authenticated copy of the deed of lease, (3) the admissions of the parties, and (4) the proof of loss, as these several matters are set forth in the defendant’s bill of exceptions Ho. 1, introduced (5) K. F. Yaughan as a witness in their behalf, who testified as follows:
“Previous to the first day of January, A. D. 1873, the firm of which I was a member, had been agents for the Maryland Fire Insurance Company, and that company had insured the same building described in the policy of the Manhattan Fire Insurance Company of New York city, mentioned in the plaintiff’s declaration, and it was then owned by the plaintiffs, and described in the policy of the Maryland Fire Insurance Company as it is described in the said policy of the said Manhattan Fire Insurance Company. The agency for the said Maryland Fire Insurance Company, before the said first day of January, A. D. 1873, had been transferred from our firm to A. M. Yaughan, and the plaintiffs applied to our firm for a renewal of their policy in the Maryland Fire Insurance Company, but our agency for that company having ceased, and *392 we uo company in which we could place it, I applied to A. M. Vaughan to take the risk, giving him in writing a description of the said building as it was ¿egcrjjje¿ }n the policy of the Maryland Fire Insurance Company. I did not then know that the said building stood on leased land. I have ascertained that since. Qur £rm was then composed of J. G. Deming, R. O. M. Wingfield and myself. A. M. Vaughan then issued the policy sued on, and delivered it to me, and then I delivered it to the plaintiffs, and received from them the premium, and gave A. M. Vaughan credit for it on our books. We retained one-half of the commissions on the premium, and paid the'rest of the premium to A. M. Vaughan.”
And then the plaintiffs introduced (6) A. M. Vaughan as a witness in their behalf, who testified as follows:
“I was, and still am, the agent of the defendant, the Manhattan Fire Insurance Company. R. F. Vaughan, of the firm of Deming, Wingfield & Co., applied to me in behalf of the plaintiffs, for an insurance on the building mentioned in the policy sued on, furnishing me with a written description of the property as it is stated in that policy. In behalf of the defendant I accepted the risk, and issued the policy. At that time I knew that the building stood on leased ground, and if the application had been made to me by the plaintiffs I might have so described it. But supposing that the description in writing furnished me by R. F. Vaughan was the form by which the other companies—those represented by Deming, Wingfield & Co. had written—and the form adopted in their policies, I followed the written description furnished me in making out the policy sued on. I did this, although I knew at the time that the building stood on leased ground; but I do not recollect that this occurred to me at that time.”
*393 And then the plaintiffs introduced (7) J. O. Deming •as a witness in their behalf, who testified as follows:
“I have for several years—ten years—been engaged in insurance agencies, and have done an extensive business in that line in this city. I am not now so engaged. Wingfield and Yaughan were my partners for several years. Both of them were my partners on the ■first day of January, A. D. 1878. I can’t say I know anything about the getting out of the particular policy •sued on by the plaintiffs. I can only speak in general terms of what I have done for the plaintiffs. I would state that those gentlemen have for several years confided their insurance business to our firm with special reference to myself. I know the particular property •on which the building in suit stood. I have known for some time that it stood on leased ground. I would •state that a large number of the companies by common consent have waived a written application for a policy on ordinary risks. I can’t say that at the time the plaintiffs stated to me that the building stood on leasehold ground, but I have known that fact for a long while. The reason that I cannot state whether the plaintiffs told me that the building stood on leased ground is, that I rarely made that a question in my practice. I represented two companies, which had given policies on that building, and was a special agent, and adjusted for one of them. They have both paid their pro rata shares of the loss occasioned by its •destruction by fire, with a full knowledge of the fact that it stood on leased ground. Each of those policies contained the same general provision as in article IV of the terms and provisions of the policy sued on, and all the modern policies are alike in this respect. I state the fact, that the companies I represented had full knowledge of the fact that the building stood on leased *394 ground when they paid their pro rata shares of the loss aforesaid, from the fact that their representatives* who supervised the ascertainment of that loss, had full-access to, and availed themselves of the records of the clerk’s office of the corporation court of this city in regard to the title.”
The first question we have to determine is whether the court below erred, in admitting this testimony. The rule of evidence invoked to exclude it is, that-which does not permit the written contract to be contradicted and varied by parol testimony. The great value of this rule of evidence cannot be easily overestimated, and merits the eulogies it has received.
In a proper case its application always promotes the-ends of justice, by protecting parties against fraud and false swearing, against carelessness and inaccuracy, by furnishing evidence of what was intended by the parties, which can always be produced without fear of change or liability to misconstruction. But experience has shown that it is not a rule of universal application. And if there did not exist some authority to correct the universality of its application, then a. rule of evidence adopted by the courts as a protection against fraud and false swearing, would, as was said in regard to the analagous rule known as the statute of frauds, become the instrument of the very fraud it was. intended to prevent.
In the ease before us the general agent of the plaintiff in error filled up the policy and took the description of the property from a policy on the same house* which had been issued by the Maryland Tire Insurance company. This agent says he knew at the time that the building stood upon leased premises. This knowledge of the general agent must be imputed to the principal. Regarding the fourth clause of the policy *395 as a warranty, then there was a breach of warrauty eo instanti of the making, of the contract. This the compány knew when it issued the policy. It knew it accepted the premium the policy was void: that when it took the premium they took no risk, and that the insured had paid his money for a policy of insuranee which the company knew was void at the moment when it was issued. To allow this would be to permit the company to receive a premium when they incurred no risk, and would encourage and promote the grossest fraud.
It is precisely in such cases as this, that the courts of law in modern times have introduced the doctrine of equitable estoppels, or as it is sometimes called estoppels en pais.
The principle is that where one party has by his representation or his conduct, induced the other party to a transaction to give him an advantage which it would be against equity and good conscience to assert, he would not in a court of justice be permitted to avail himself of that advantage.
See Insurance Company v. Wilkinson, 13 Wall. U. S. R. 222; Plumb v. Cattaraugus Insurance Company, 18 New York R. 392. Rowley v. Empire Ins. Co. 36 New York R. 550; 31 Conn. R. 526; 42 Missouri R. 148; Bidwell v. North Western Ins. Co. 24 New York R. 302.
In the last named case the court says: “Indeed it is not easy to perceive why an insurance company by reason of the formal words or clauses (of a general and comprehensive nature), inserted in a policy, intended to meet broad classes of contingencies, should ever be allowed to avoid liabilities on the ground that facts, of which the company had full knowledge, at the time of issuing the policy were then not in accord *396 anee with the formal words of the contract, or some of its multifarious conditions. If such facts are to be a breach of such a clause, they are a breach eo instanti of the making of the contract, and are so known -f-0 be foy the company as well as the insured. And to allow the company to take the premium without takr;H]^ WOuld be to encourage a fraud. It would, as a legal principle, be equivalent to holding that the warranty of the soundness of a horse is a warranty that he has four legs, when one has been cut off.” In the ease before us the knowledge of the agent must be taken as the knowledge of the company, and to avoid the policy upon the ground the building insured was upon leased ground, would be to permit the company to say, “ it is true, we knew that the building was upon leased ground; we knew that our agent, and not the insured, had filled up the description of the property, and had omitted to state the fact; but we hold it to be void because one of the conditions of the policy makes it void, if the fact that the property stands on leased ground is not so represented or expressed in the policy; and while we have received your money, we issued to you a policy which we knew to be void, eo instanti of its delivery. We took the premium, but took no risk.” Where good faith and fair dealing are of the very essence of a contract of insurance, insurance companies will be estopped from asserting a defence which not only tends to a breach of good faith, but to actual and positive fraud.
I am, therefore, of opinion that the evidence admitted by the court below was properly admitted because it proved such a state of facts as constituted an estoppel, and that the court did not err in overruling the motion to exclude the same. In addition to the authorities above cited, see Judge Burks’ opinion in *397 the case of Georgia Home Insurance Co. v. Kinnier’s adm’x, and cases cited by him, supra. 88.
The second ground upon which the company seek to relieve itself against liability for loss is, that at the time the insurance was effected, there was an incumbrance in the form of a deed of trust. How it is not pretended that there was any misrepresentation or fraudulent concealment, as to the fact of the existence of such incumbrance. On the contrary it does not appear that any question was asked the assured on that subject: but as has already been seen, the agent of the company filled up the description of the property, copying it from a policy in another company. But it is insisted that this incumbrance, existing at the time, of itself avoided the policy, under that condition which declared: “If the interest of the assured in the property be other than the entire unconditional and sole ownership of the property for the use and benefit of tbe assured, * * * it must be so represented to the company, and so expressed in the written part of the policy. Otherwise the policy shall be void.”
It was held by this court, in West Rock. Mutual Fire Ins. Co. v. Sheets, 26 Gratt. 871, that unless there be a warranty, or a representation that amounts to a warranty, a policy cannot be avoided for incumbrances unless upon the applicants false and fraudulent answers to interrogatories. Of course if there be a warranty, or a representation amounting to a warranty, that there are no incumbrances on the property, whether such answer be given in answer to a question or not; if it be untrue, the policy would be void, even though the insured might not be guilty of actual fraud.
The question then in this case turns upon the construction to be given to the condition in the policy above quoted. Can that be construed to be a warranty- *398 on the part of the assured that there was no incumbrance on the property insured? This condition does refer to the legal title, but to the interest of the assured in the property; that he warranted to be no “othej. than the entire unconditional and sole ownership of the property.” This was no warranty against ' liens and incumbrances. His interest was the sole ownership. The fact that he had mortgaged the property did not make the mortgagee a joint owner with him. The fact that he may have incumbered it with a deed of trust does not make the- cestui que trust a. joint owner. The fact that there may have been liens for taxes, or liens by judgment, did not affect his ownership. He is still the sole owner, though he may have incumbered it, or liens may exist against it, and the existence of such is no breach of a condition declaring sole ownership. This is the doctrine of the courts, séttled by repeated decisions. Strong v. Manufacturers Ins. Co., 10 Pick. R. 40; Ætna Fire Ins. Co. v. Tyler, 16 Wend. R. 385; 12 Wend. R. 507; Smith v. Columbia Ins. Co., 17 Penn. State R. 253; Hough v. City Fire Ins. Co., 29 Cow. R. 10. In the last named case, it was a condition of the policy, that “if the interest in the property insured is not absolute, it must be so represented to the company and expressed in the policy in writing, otherwise the insurance shall be void. The applicant represented the property as his house, and it was so represented in the policy. In fact he had only agreed to purchase the property, but under his agreement had paid part of the purchase money, had taken possession, and made valuable improvements. It was held that the statement made by •the assured, that the property was his was true, and his interest was an absolute one. The court said,. “ the ¡subject of insurance was an interest, not a title. It is *399 an interest, not a title, of which the conditions of insurance speak. The terms interest and title are not synonomous.
A mortgagor in possession, and a purchaser holding under a deed defectively executed, have both of them ■absolute as well as insurable interests in the property, though neither of them has the legal title. The condition in question speaks only of the character of the interest to be insured, not of its quality.”
In Aurys v. Hartford Fire Ins. Co., 17 Iowa 176, the court holds the following language, speaking upon this point, and which very aptly applies to the ease before us: The object-of the insurance company by this clause {i. e., a claim providing against change of interest, &c.) is, that the interest shall not change, so that the assured shall have a greater temptation or motive to burn the property, or less interest or watchfulness in guarding and preserving it from destruction by fire. Any change in, or transfer of the assured in the property, of a nature calculated to have this effect, is in violation of the policy. But if the real ownership remains the same, if there is no change in the fact of title, but only in the evidence of it, and if the latter ■change is only nominal, and not of a nature calculated to increase the motive to burn, or diminish the motive to guard the property from loss by fire, the policy is not violated.” See also Shepard v. Union Fire Ins. Co., 38 New H. 232.
I am of opinion, both upon principle and authority, that the condition referred to is not a warranty against incumbrance, and that the fact that the assured had incumbered the property was no breach of that condition.
As was said by the president in W. R. F. C. v. Sheets (supra): “ There is nothing in this policy (whea *400 construed) which required a disclosure by the-insured of the liens upon the insured property. There-no question proposed by the insurer to the insured ^ regar(j to existence of such liens. The insurers might have examined the records for such liens, and made inquiries about them of the insured, or-others, but they failed to do so. Can they now avoid the obligation of the policy on the ground that the insured, without being inquired of, and without any fraud, omitted to give notice of the lien at the time of' obtaining the policy ? I think they cannot.” Page 870.
I am therefore of opinion that in the absence of all fraud, in the absence of all proof or pretence of any misrepresentation or fraudulent' concealment, on the part of the assured, the defense set up by the insurance company, is purely technical, and ought not to shield them against their just liability to the assured for the loss he has sustained.
I am for affirming the judgment of the corporation court of the city of Norfolk.
Moncure, P., and Staples and Burks, Js., concurred in the opinion of Christian, J.
Judgment arrirmed.