730 P.2d 1014

**Georgeana E. WHITE,
Plaintiff-Respondent,**

v.

**UNIGARD MUTUAL INSURANCE CO.,
a Washington corporation,
Defendant-Appellant.**

**UNIGARD MUTUAL INSURANCE CO.,
a Washington corporation,
Counterclaimant,**

v.

**Georgeana E. WHITE,
Counterdefendant.**

**No. 16228.**

Supreme Court of Idaho.

Dec. 29, 1986.

John P. Howard and David E. Day (argued), of Quane, Smith, Howard & Hull, Boise, for defendant-appellant.

Terry M. Michaelson (argued), Hamilton, Clark & Michaelson, Nampa, for plaintiff-respondent.

BISTLINE, Justice.

On February 14, 1984, a fire damaged the premises of Nampa Beauty College, owned by Georgeana White. White notified and submitted her claim to her Insurer, Unigard. Arson was suspected, and, subsequently, White and her daughter, Jan Blevins, were charged with arson and insurance fraud. However, at the preliminary hearings the charges were dismissed due to insufficient evidence.

White then demanded settlement of Unigard. Unigard required a sworn statement from White, which she provided. At the request of Unigard, White also made available for inspection various items damaged in the fire. Ultimately, Unigard denied coverage for the loss based upon its belief that White was responsible for the fire. (White's policy excluded coverage in the event of arson or other intentional acts of the insured).

Subsequently, White filed suit in state court. Unigard, a Washington corporation, filed in Federal District Court for the District of Idaho for declaratory relief. Ultimately the state action was removed to the federal court and the two actions were consolidated. Unigard moved for a partial summary judgment as to White's complaint at which time the District Court, pursuant to I.A.R. 12.1(a), certified the following questions concerning Idaho law: (1) does the State of Idaho recognize a tort action, distinct from an action on the contract, for an insurer's bad faith in settling the first party claims of its insured; and (2) is there a private right of action under Idaho's Unfair Claims Settlement Practices Act, Idaho Code § 41–1329 (1977), whereby an insured can sue the insurer for statutory violations committed in connection with the settlement of the insured's claim? The first question we answer in the affirmative and, based on that holding, find that a statutory remedy is neither prescribed nor necessary to assure the effectiveness of Idaho's Unfair Claims Settlement Practices Act, Idaho Code § 41–1329.

## I

The first question of law certified by the U.S. District Court of the District of Idaho for review by this Court, pursuant to Idaho Appellate Rule 12.1(a), is whether Idaho recognizes a tort action, distinct from an action on the contract, for an insurer's bad faith in settling the first party claims of its insured.

In the recent case of *Sullivan v. Allstate Insurance Co.*, 111 Idaho 304, 723 P.2d 848 (1986), we tangentially addressed the issue of an insurer's duty of good faith. In *Sullivan,* the plaintiffs had filed a claim for coverage under the uninsured motorist provision of their automobile insurance policy. Allstate refused the claim "on the basis that Julie Sullivan was the proximate cause of her own injuries." *Id.* at 305, 723 P.2d at 849. When the case went to arbitration, the arbitrators returned a finding of negligence on the part of Julie Sullivan in the amount of 35 percent. This Court in conclusion stated that "Allstate's denial of liability upon the grounds that Julie Sullivan's own negligence was the proximate cause of her damages, was not taken in bad faith. *The uncontested finding of the arbitrators of 35 percent negligence on the part of Julie Sullivan speaks loudly in defense of the position of Allstate.*" *Id.* at 306, 723 P.2d at 850 (emphasis added). In other words, since the facts indicate that the plaintiff had been a contributing cause to her own injuries, Allstate's refusal to make payment under the policy was "justified" and, hence, not made in bad faith.

In the wake of *Sullivan,* we are in much the same position as was the *Supreme Court of Wisconsin in Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 271 N.W.2d 368 (1978). In *Anderson,* the court noted that "[a]lthough such a cause of action has never been explicitly recognized in this state, implicit recognition to such a claim was given in the case of *Drake v. Milwaukee Mutual Ins. Co.,* 70 Wis.2d 977, 236 N.W.2d 204 (1975)." *Anderson, supra,*

271 N.W.2d at 373. In discussing *Drake*, the court stated:

> tortious breach of contract could be asserted against an insurer, it would not have proceeded to determine whether the facts were sufficient to state that cause of action, but it did just that. The claim of tortious breach of contract was thrown out, not because such a claim could not be asserted under Wisconsin law against an insurer, but because the facts pleaded were insufficient. *Id.*

As in *Drake*, the necessary implication of *Sullivan* is that a claim for a tortious breach of contract could be asserted against an insurer in some circumstances. *Id.* Likewise, in *Sullivan*, we found it unnecessary to elaborate further since under the facts of that case there was no genuine issue as to the insurer's "bad faith." The question presented by the federal district court in this case, however, requires some further discussion. While declining to rule on the particular facts of this case, we hold that: (1) there is a common law duty on the part of insurers to their insureds to settle first party claims in good faith and that a breach of this duty will give rise to an action in tort, but that (2) Idaho's Unfair Claims Settlement Practices Act, I.C. § 41–1329, does not give rise to a private right of action whereby an insured can sue the insurer for statutory violations committed in connection with the settlement of the insured's claim.

## A. DUTY TO SETTLE IN GOOD FAITH

That there is a duty of good faith and fair dealing inherent in every contract is not disputed. Under the common law, "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205 (1979). "[A]ll courts are agreed that the insurer does owe to insured some duty in this respect." *Hilker v. Western Automobile Ins. Co.*, 204 Wis. 1, 235 N.W. 413, 414 (1981).

The Supreme Court of Montana expressly held in *Lipinski v. Title Ins. Co.*, 202 Mont. 1, 655 P.2d 970 (1983), despite a statutory provision which prohibits the imposition of punitive damages arising from a breach of contract, that "insurance companies have a duty to act in good faith with their insureds, and that *this duty exists independent of the insurance contract and independent of statute.*" *Id.*, 655 P.2d at 977 (emphasis added). Such a duty is beyond that which the policy imposes by itself—the duty to defend, settle, and pay—but is a duty imposed by law on an insurer to act fairly and in good faith in discharging its contractual responsibilities. *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032, (1973).

■ Contrary to some authority, this duty arises not only in the context of third party situations (actions brought as a result of the insurer's failure to settle the claims of third parties within the policy limits of the insured), but also in first party actions (when the insured is personally filing a claim for benefits against the insurer under the policy). As the court in *Gruenberg* stated:

> It is manifest that a common legal principle underlies all of the foregoing decisions; namely, that in every insurance contract there is an implied covenant of good faith and fair dealing. *The duty to so act is imminent in the contract whether the company is attending to claims of third persons against the insured or the claims of the insured itself.* Accordingly, when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort. *Gruenberg, supra,* 108 Cal.Rptr. at 486, 510 P.2d at 1038 (emphasis added).

*See also Rogers v. Pennsylvania Life Insurance Co.*, 539 F.Supp. 879 (S.D.Iowa, 1982); *Tank v. State Farm Fire and Casualty Co.*, 105 Wash.2d 381, 715 P.2d 1133 (1986); *Chavers v. National Security Fire and Casualty Co.*, 405 So.2d 1 (Ala.1981); *Massey v. Armco Steel Co.*, 635 S.W.2d 596 (Tex.1982); *Noble v. National American*

*Life Insurance Co.*, 128 Ariz. 188, 624 P.2d 866 (1979); *Anderson v. Continental Insurance Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978); *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 157 Cal.Rptr. 482, 598 P.2d 452 (1979).

As the court in *Anderson* noted, "[t]he rationale which recognizes an ancillary duty on an insurance company to exercise good faith in the settlement of third-party claims is equally applicable and of equal importance when the insured seeks payment of legitimate damages from his own insurance company. *That such a duty arises out of the relationship between the contracting parties themselves cannot be doubted.*" *Anderson, supra*, 271 N.W.2d at 375 (emphasis added).

The question before this Court, then, is not whether a duty of "good faith" exists, but rather whether a breach of this duty will give rise to an independent action in tort.

## B.  TORT OF BAD FAITH

█ There has been much confusion in the courts over this precise issue. In *Anderson, supra*, 271 N.W.2d at 374, the court noted that this confusion may be traced to the the fact that the tort of bad faith has been referred to by some as a tortious breach of contract. *Id.* at 374. The court was quick to note, however, that:

> [w]hile ["tortious breach of contract"] may be a convenient shorthand method of denominating the intentional conduct of a contracting party when it acts in bad faith to avoid its contract obligations, it is confusing and inappropriate, because it could lead one to believe that the wrong done is the breach of the contract. It obscures the fact that *the bad faith conduct by one party to a contract toward another is a tort separate and apart from a breach of contract per se* and it fails to emphasize the fact that damages

may be recovered for the tort and for the contract breach. *Id.* at 374 (emphasis added).

The court was emphatic in adding that "the tort of bad faith is not a tortious breach of contract. *It is a separate intentional wrong, which results from a breach of a duty imposed as a consequence of the relationship established by contract.*" *Id.* at 374 (emphasis added); *accord, e.g., Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565, 574–577 (S.Ct.1986); *Noble, supra*, 624 P.2d at 868.

This Court has indicated, if only implicitly, that an insurer's bad faith in settling the first party claims of its insured may give rise to an independent action in tort. In *Linscott v. Rainier National Life Insurance Co.*, 100 Idaho 854, 606 P.2d 958 (1980), Justice McFadden noted that: "it might be shown that in denying the claim the company committed some *independently tortious act,* which would give rise in itself to an award of punitive damages." *Id.* at 860, n. 6, 606 P.2d at 964, n. 6 (emphasis added). *Sullivan* affirms this inference.[1]

An action in tort provides a remedy for harm done to insureds though no breach of an express contractual covenant has occurred and where contract damages fail to adequately compensate insureds. While punitive damages are available on contract actions in Idaho, *Linscott v. Rainier National Life Ins. Co.*, 100 Idaho 854, 606 P.2d 958 (1980), the requirement that contract damages be foreseeable at the time of contracting, *Lamb v. Robinson*, 101 Idaho 703, 705, 620 P.2d 276, 278 (1980), in some cases would bar recovery for damages proximately caused by the insurer's bad faith. The measurement of recoverable damages in tort is not limited to those foreseeable at the time of the tortious act;

---

1.  While *"ordinarily* [the] *mere* breach of contract [is] not a tort," *Dunbar v. United Steelworkers of America*, 100 Idaho 523, 547, 602 P.2d 21, 45 (1979) (Bakes, J., concurring specially) (emphasis added) (discussing *Just's, Inc. v. Arrington Constr. Co.*, 99 Idaho 462, 583 P.2d 997 (1978)), as demonstrated throughout this opinion, the contract between insurer and insured is no "ordinary" contract, and breach of the duty of good faith and fair dealing is no "mere" breach.

rather they include "[a] reasonable amount which will compensate plaintiff for *all* actual detriment proximately caused by the defendant's wrongful conduct." IDJI 920(1) (1982) (emphasis added). As the California Supreme Court has unanimously held: "The general rule of damages in tort is that the injured party may recover for *all* detriment caused *whether it could have been anticipated or not.*" *Crisci v. Security Ins. Co. of New Haven, Conn.*, 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173, 178 (1967) (emphasis added). Professor McCormick explains:

> [T]he majority of courts do not use "reasonable foreseeability" as the test of responsibility for particular harmful consequences in tort cases, but hold, on the other hand, that one who commits a wrongful act "is liable for all the direct injury resulting from such act, although such resulting injury could not have been contemplated as a probable result of the act done." C. McCormick, *Handbook on the Law of Damages* § 74, p. 265 (1935) (footnote omitted); *see also id.* at § 137, pp. 560–62 (contrasting the basis for compensation in tort and contract cases).

Thus, an insured person whose business goes bust as a result of an insurer's bad faith would be able to recover whether the bust was foreseeable or not. For example, an insured who takes out a second mortgage on her business property *after* purchasing her policy, and who could not make her combined payments when the insurer delayed settlement, would recover at tort, but not at contract. To deny an action in tort would deny such recovery and consequently encourage insurers to delay settlement. In contrast, an action in tort will provide necessary compensation for insureds and incentive for insurers to settle valid claims. *See* Idaho Const., art. 1, § 18 ("[A] speedy remedy [is] afforded for every injury...."). At worst, the availability of

an action in tort will add nothing to the liability of insurers.

The *Rawlings* Court aptly observed:

> Because of the disparity in bargaining power and the nature of the contract, the insurer receives both premium and control. *Barrera v. State Farm Mutual Automobile Insurance Co.*, 71 Cal.2d 659, 79 Cal.Rptr. 106, 117, 456 P.2d 674, 685 )1969).... In first-party situations the insurer sets the conditions for both presentment and payment of claims. In both first- and third-party situations the contract and the nature of the relationship effectively give the insurer an almost adjudicatory responsibility. The insurer evaluates the claim, determines whether it falls within the coverage provided, assesses its monetary value, decides on its validity and passes upon payment. Although the insured is not without remedies if he disagrees with the insurer, the very invocation of those remedies detracts significantly from the protection or security which was the object of the transaction. Thus, the insurance contract and the relationship it creates contain more than the company's bare promise to pay certain claims when forced to do so; implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured. *Parsons v. Continental National American Group, supra* [113 Ariz. 223, 550 P.2d 94 (1976)]; *Egan v. Mutual of Omaha Insurance Co.* [24 Cal.3d 809, 169 Cal.Rptr. 691, 620 P.2d 141 (1979)], *supra. Rawlings, supra*, 726 P.2d at 570–571 (footnote omitted).

Thus, where an insurer "intentionally and unreasonably denies or delays payment" on a claim, and in the process harms the claimant[2] in such a way not fully compensable at contract, the claimant can bring an action in tort to recover for the harm done. *Id.*, 726 P.2d at 572. The availability of an action for bad faith will provide incentive to

---

**2.** Such delay might cause an insured whose business property was damaged to default on payments, or a personally injured insured to forego needed treatment. *Id.* As the *Noble* court observed: "Often the insured is in an especially vulnerable economic position when such a casualty loss occurs." 624 P.2d at 868; *accord, Massey, supra*, 635 S.W.2d at 601.

insurers to honor their implied covenant to the insureds.[3]

## C. THE SPECIAL RELATIONSHIP BETWEEN INSURER AND INSURED

The imposition of liability in tort for bad faith breach of an insurance contract is further warranted when one considers the special relationship which exists between insurer and insured. "The insurance contract has long been recognized as giving rise to a special relationship between insurer and insured (see *Manhattan Fire Ins. Co. v. Weill & Ullman*, 69 Va. (28 Gratt.) 389, 26 Am.Rep. 364 (1877)), which requires that the parties deal with each other fairly, honestly, and in good faith (*Germania Ins. Co. v. Rudwig*, 80 Ky. 223, 235 (1882))." McCarthy, *Punitive Damages in Bad Faith Cases 3d*, 23 (1983); *accord, e.g., Noble, supra*, 624 P.2d at 867. John G. Holinka, commenting on insurance contracts, noted that it is the unique, "personal" (non-commercial) nature of insurance contracts which justifies the imposition of the duty of good faith and fair dealing. Holinka, *Damages for Mental Suffering Caused by Insurers: Recent Developments in the Law of Tort and Contract*, 48 Notre Dame Lawyer 1303 (1973). The insured-insurer relationship is one "characterized by elements of public interest, adhesion and fiduciary responsibility." Seaman's Direct Buying Serv. v. Standard Oil, 686 P.2d 1158, 1166 (Cal.1984). As Louderback and Jurika noted in *Standards for Limiting the Tort of Bad Faith Breach of Contract*, 16 U.S.F.L.Rev. 187 (1982):

> The adhesionary aspects of the insurance contract, including the lack of bargaining strength of the insured, the contracts standardized terms, the motivation of the insured for entering into the transaction and the nature of the service for which the contract is executed, distinguish this contract [insurance contract] from most other non-insurance commercial contracts. These features characteristic of the insurance contract make it particularly susceptible to public policy considerations. 16 U.S.F.L.Rev. 187, 200–01 (1982).

It is in fact these "adhesionary aspects" of the insurance contract which have prompted this court in the past to come to the aid of the insured. *Chancler v. American Hardware Mut. Ins. Co.*, 109 Idaho 841, 712 P.2d 542 (1985); *Moss v. Mid-American Fire and Marine Ins. Co.*, 103 Idaho 298, 647 P.2d 754 (1982).

Louderback and Jurika observed that, although the insurance companies cannot be said to be fiduciaries for their insureds in the strict meaning of the term, "under certain circumstances, the insured ... [has] a right to place [his] trust and confidence in these larger entities." Louderback and Jurika, *Standards for Limiting the Tort of Bad Faith Breach of Contract, MFA Mutual Insurance Co. v. Flint*, 574 S.W.2d 718 (Tenn.1978). As the *Rawlings* court noted:

> The industry itself seems to recognize these principles. Advertising programs portraying customers as being "in good hands" or dealing with a "good neighbor" emphasize a special type of relationship between the insured and the insurer—one in which trust, confidence and peace of mind have some part. *Rawlings, supra*, 726 P.2d at 571 n. 3.

This special relationship justifies the recognition of a covenant of good faith and fair dealing.

The defendant concedes that while an action sounding in tort may be applicable in third party situations due to the fiduciary relationship established when the insurer assumes control of the litigation, including the power to settle, it has no merit when

---

**3.** Contrary to Unigard's assertions, the statutory scheme to regulate the insurance industry fails to provide sufficient incentive. The Department of Insurance has limited means with which to police the insurance industry. Further, in instances of bad faith, the remedies afforded by statute would fail to compensate for damages beyond the policy amounts and attorney's fees

occasioned by unreasonable delay. As the Montana Supreme Court has observed, statutes regulating the insurance industry do little to encourage the settlement of large claims unless they are backed up with an action for bad faith. *Klaudt v. Flink*, 202 Mont. 247, 658 P.2d 1065, 1067 (1983) (holding Montana's Unfair Trade Practices Act gives rise to an action in tort).

the insured is bringing the action himself. This Court addressed this argument, albeit indirectly, in *Sullivan, supra.* In *Sullivan,* Justice Shepard noted correctly that the insured, by initiating a first party law suit against the insurer, *does not* necessarily create an adversarial relationship between himself and the insurer which abrogates the special relationship imposed by the insurance contract. In holding that the trial court was correct in issuing a summary judgment, Justice Shepard stated that "the absence of any showing in the record of bad faith on the part of Allstate in failing to pay the claim submitted by the Sullivan's, [precluded an action in tort]." *Id.,* 723 P.2d at 851 (Sullivan had alleged outrage, willful breach of contract, and bad faith in refusing to settle a claim made under a policy issued by Allstate). What *Sullivan* teaches, then, is that while there may be an action in tort for the willful breach of an insurance contract and for the insurer's bad faith in failing to promptly settle a valid claim, the outcome of any action will depend upon the particular facts of the case. (*See* discussion, *supra* pp. 1015, of *Anderson v. Continental Ins. Co.*).

Of course the mere failure to immediately settle what later proves to be a valid claim does not of itself establish "bad faith." As indicated earlier, the insured must show the insurer "intentionally and unreasonably denies or delays payment...." *Rawlings, supra,* 726 P.2d at 572. An insurer does not act in bad faith when it challenges the validity of a "fairly debatable" claim, or when its delay results from honest mistakes. *Id.,* 726 P.2d at 572–573; *accord, Noble, supra,* 624 P.2d at 868.

## CONCLUSION

■ The tort of bad faith breach of insurance contract, then, has its foundations in the common law covenant of good faith and fair dealing and is founded upon the unique relationship of the insurer and the insured, the adhesionary nature of the insurance contract including the potential for overreaching on the part of the insurer, and the unique, "non-commercial" aspect of the insurance contract. Accordingly, we hold that there exists a common law tort action, distinct from an action on the contract, for an insurer's bad faith in settling the first party claims of its insured.

## II

■ The second question of law certified by the U.S. District Court for the District of Idaho to this court, pursuant to Idaho Appellate Rule 12.1(a), is whether a private right of action under Idaho's Unfair Claims Settlement Practices Act, Idaho Code § 41–1329 (1977) (hereinafter "the Act") exists, whereby an insured can sue the insurer for statutory violations committed in connection with the settlement of the insured's claim. Although the courts which have interpreted their own "Unfair Claims Settlement Practices Acts" appear to be divided, there is substantial support for the proposition that "Unfair Claims Settlement Practices Acts" create a private right of action, whereby an insured can sue the insurer for statutory violations committed in connection with the settlement of the insured's claim. *Jenkins v. J.C. Penney Casualty Insurance Company,* 280 S.E.2d 252 (W.Va.1981); *Nichols v. State Farm Mutual Auto Ins. Co.,* 279 S.C. 336, 306 S.E.2d 616 (1983); *Klaudt v. Flink,* 202 Mont. 247, 658 P.2d 1065 (1983); *Royal Globe Insurance Co. v. Superior Court,* 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (1979).

The law of torts today provides a wide "variety of new remedies for newly recognized rights, either outside the traditional tort categories or as subcategories thereof." 74 Am.Jur.2d, *Torts,* § 3. In some cases, the law offers remedies for intentionally caused injury to another, even though the wrongdoer's conduct falls outside the traditional pigeon-holes. Restatement (Second) Torts § 870 (1965). In others, statutory law establishes rights, defines wrongs, and implies remedies. *Id.* at § 874A.

According to the Restatement (Second) of Torts § 874A (Tort Liability for Violation of Legislative Provision):

> When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and *needed to assure the effectiveness of the provision,* accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action. *Id.* (emphasis added).

Under § 874A of The Restatement (Second) of Torts, it is clear that the lack of an express civil remedy in the Insurance Code is not fatal to an insured/plaintiff's tort action. However, based on our discussion and holding in question # 1, i.e., that there is a common law duty on the part of insurers to their insured to settle the first party claims of their insured in good faith and that a breach of that duty will give rise to an action in tort, we find that a statutory remedy is neither prescribed nor necessary to assure the effectiveness of Idaho's Unfair Claims Settlement Practices Act, Idaho Code § 41–1329. Thus, we hold that Idaho's Unfair Claims Settlement Practices Act, I.C. § 41–1329, does not give rise to a private right of action whereby an insured can sue an insurer for statutory violations committed in connection with the settlement of the insured's claim.

Costs to Respondent; no award of attorneys fees.

DONALDSON, C.J., and HUNTLEY, J., concur.

BAKES, Justice, concurring as to Part II and dissenting as to Part I:

It has long been the law in this state that non-performance of contractual obligations does not give rise to an action in tort. In *Carroll v. United States*, 107 Idaho 717, 629 P.2d 361 (1984), Justice Huntley, writing for four members of the Court, expressly stated:

> "Under Idaho law it is settled that an alleged failure to perform a contractual obligation is not actionable in tort. As Justice Bakes observed in his special concurrence in *Dunbar, supra,* Idaho case law establishes that mere breach of contract does not ordinarily constitute a tort. In *Taylor v. Herbold*, 94 Idaho 133, 483 P.2d 664 (1971), we stated, 'To found an action in tort, there must be a breach of duty apart from the *non-performance* of a contract.' In *Just's, Inc. v. Arrington Construction Co.*, 99 Idaho 462, 583 P.2d 997 (1978), we again acknowledged that 'a tort requires the wrongful invasion of an interest protected by the law, not merely an invasion of an interest created by the agreement of the parties.' ... Mere non-feasance, *even if it amounts to a willful neglect to perform* the contract, is insufficient to establish a duty in tort." *Id.* at 719, 629 P.2d at 363.

It is readily apparent that the *sine qua non* of plaintiff's claim against Unigard is the non-performance of a contractual obligation, *i.e.*, failure to pay benefits allegedly due under the contract for which plaintiff has paid premiums. While it has been said that "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement," Restatement (Second) Contracts, § 205 (1979), such a duty does *not* exist independent of the contract itself. The duty of "good faith and fair dealing" acquires meaning only when considered in the context of the underlying contract. The duty arises *only* in the performance and enforcement of a contract.

Thus, any breach of this duty, which is nothing more than a breach of an implied contractual covenant, gives rise to an action on the contract. It does not give rise to an action in tort. *Taylor v. Herbold*, 94 Idaho 133, 483 P.2d 664 (1971). An action in tort lies only for breach of a duty imposed by law apart from a contract, *e.g.*, duty to use ordinary care so as to avoid injury to another. The Court's opinion has failed to grasp this fundamental distinction between tort and contract law. "There is

no tort liability for ... failing to do what one has promised to do in the absence of a duty to act apart from the promise made." Prosser, *Torts* § 92 (1984). In other words, if the alleged obligation to do or not to do something does not exist except for the contract, then breach of such an obligation is answerable only on a contract theory. *Id.; Taylor v. Herbold, supra.*

The fact that a contractual covenant, such as a covenant of good faith and fair dealing, is implied does not mean that violation of such gives rise to an action in tort. A covenant of good faith and fair dealing is not a duty that exists independent of the contract. An adequate remedy exists in an action on the contract for breach of the covenant of good faith and fair dealing. There simply is no need for this Court to now create an additional action in tort. If breach of the covenant is so egregious so as to constitute "an extreme deviation from reasonable standards of conduct, performed with an understanding of its consequences," *Linscott v. Rainier National Life Ins. Co.,* 100 Idaho 854, 860, 606 P.2d 958, 964 (1980), then the injured party may properly seek punitive damages for such a "bad faith" breach of a covenant of good faith and fair dealing.

Those jurisdictions which have created the tort of bad faith breach of an insurance contract apparently have done so because those same jurisdictions prohibit an injured party from seeking punitive damages in a contract action for such egregious, bad faith conduct. The leading case relied on by the majority, *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973), was just such a case. California courts are prohibited from awarding punitive damages in breach of contract actions.

"The statute providing for exemplary or punitive damages authorizes the recovery of such damages *only* in an action for the breach of an obligation *not arising from contract.* Thus, an award of exemplary or punitive damages may not be granted to the plaintiff in an action based on a breach of contract, even though the defendant's breach was will-
ful, fraudulent, or malicious." 23 Cal. Jur.3d, *Damages* § 121 (1975).

Thus, the California Supreme Court in *Gruenberg* had no remedy other than creating the bad faith tort in order to redress the alleged unconscionable actions of the insurance company in that case. Contrary to the law in California, the law in Idaho permits recovery of punitive damages in breach of contract actions. Therefore, the *Gruenberg* rationale is not applicable in this jurisdiction. The same is true in Montana where, as the majority opinion itself recognizes, punitive damages are prohibited in contract actions by statute. That explains why the court in *Lipinski v. Title Ins. Co.,* 202 Mont. 1, 655 P.2d 970 (1983), created the new tort of "bad faith" breach of the duty of fair settlement. However, in Idaho, a party alleging unconscionable conduct on the part of an insurance company in settling a claim may properly seek punitive damages in an action on the contract for such egregious or bad faith conduct. *Linscott v. Ranier Natl. Life Ins. Co., supra.* Thus, in Idaho, an action in tort is unnecessary. It adds nothing by way of possible recovery that is not already available by way of an action on the contract.

Plaintiff may sue on the contract and seek damages based on her expectation interest under the contract. Damages based on her expectation interest may be measured by "the loss in the value to [her] of [Unigard's] performance caused by its failure or deficiency, plus any loss, including incidental or consequential, caused by the breach." Restatement (Second) Contracts, § 347 (1981). Plaintiff's alleged damage of loss of credit and foreclosure of her property may be compensable in an action on the contract if such damages were foreseeable, or within the contemplation of the parties, at the time the contract was formed. Hadley v. Baxendale, 9 Exch. 341, 156 Eng.Rep. 145 (1854); McCormick, *Damages* §§ 137, 138 (1935); *Lamb v. J.T. Robinson,* 101 Idaho 703, 620 P.2d 276 (1980); *J.B. Traylor v. Henkels & McCoy, Inc.,* 99 Idaho 560, 585 P.2d 970 (1978); *Nora v. Safeco Ins. Co.,* 99 Idaho 60, 577

P.2d 347 (1978) (McFadden, J., dissenting). Any damages resulting from breach of the covenant of good faith and fair dealing would be recoverable to the extent that the party in breach had reason to foresee that such loss would be the probable result of the breach at the time the contract was made. A foreseeable loss is one which follows from the breach of a contract in the ordinary course of events, or even if not in the ordinary course of events a loss which the party in breach had reason to know would result from a breach of the covenant. Restatement (Second) *Contracts* § 351 (1981). Accordingly, the plaintiff's contract remedies are adequate and there is no reason for this Court to create another new tort.

The majority also errs in its assertion that a fiduciary relationship exists between an insurer and its insured when suit is brought by the insured based on a claim under the terms of the policy. The majority purports to find support for its position in our recent case of *Sullivan v. Allstate Ins. Co.*, 111 Idaho 304, 723 P.2d 848 (1986). The majority paraphrases language from *Sullivan*, but does so out of context. The Court in *Sullivan* specifically declined to "decide the legal relationship which exists between an insured and an insurance carrier when the insured makes a claim under *an uninsured motorist clause* of an [automobile] insurance policy, *i.e.,* whether that relationship is adversarial or fiduciary." *Sullivan v. Allstate Ins. Co., Id.* at 306, 723 P.2d at 850 (emphasis added). The majority now elevates that deliberate nondecision to the level of controlling precedent.

The *Sullivan* decision dealt solely with the unique issues of coverage "under an uninsured motorist clause." It was only under those unique circumstances that we stated, "It is sufficient to say we do not agree with those courts who hold that in *all* circumstances the relationship is adversarial in nature and no obligation or liabili-

ty rests upon the insurance carrier until the 'legal liability' of the uninsured motorist has been either admitted or adjudicated." *Id.* Here, we are not involved with uninsured motorist coverage or any remotely analogous circumstance. It is therefore clear that when Mrs. White asserts a claim against Unigard for which coverage is denied, an adversarial relationship exists between the two. A first party claim, as is the case here, establishes a relationship between insured and insurer entirely distinct from that established when the claim is asserted by a third party. As was adequately stated by the *Kansas Supreme Court in Spencer v. Aetna Life & Cas. Ins. Co.*, 227 Kan. 914, 611 P.2d 149 (1980):

> "The first party relationship is distinguishable from the third party situation. In third party claims, the absolute control of the trial and settlement is in the hands of the insurer. That control gives rise to a fiduciary relationship between the insurer and its insured. In first party claims the insurer is not in a position to expose the insured to a judgment in excess of policy limits through its unreasonable refusal to settle a case nor is the insurer in exclusive control of the defense. Although an insurer must make a good faith attempt to settle claims [K.S.A. 40–2404(9)(F)], the insured and insurer in a first party relationship have an adversary relationship, rather than a fiduciary relationship." *Id.,* 611 P.2d at 155.

The majority's attempt to cast the relationship between plaintiff and Unigard as one between principal and fiduciary is unsupportable in law or logic.[1] Again, the entire thrust of plaintiff's claim against Unigard is the non-performance of Unigard's alleged contractual obligation. If in fact plaintiff is able to establish that failure to perform was the result of willful or malicious or "bad faith" conduct on the part of

---

1. The majority's assertion that the insurance contract between Unigard and White is "personal" and not commercial in nature is likewise unavailing. The interests insured by Unigard are clearly commercial in nature. Mrs. White was insuring against economic loss, *i.e.,* loss of her place of business by fire, etc. She was not insuring her life or health.

Unigard, then her remedy is to seek punitive damages. *Linscott v. Rainier Natl. Life Ins. Co., supra.*[2] Therefore, there is absolutely no need to create another new tort, as the majority does today.

The action of the Court today is particularly inappropriate given the present public perception that there is a crisis in our tort law system which requires immediate legislative tort law reform. Today's decision can only fan the flames of legislative tort law reform.

SHEPARD, J., concurs.

---

**2.** The majority purports to find support in the *Linscott* case for the existence of an independent tort of bad faith breach of insurance contract. There is no basis for such a conclusion. *Linscott* specifically recognized that the remedy for bad faith breach of contract was an action on the contract and, under appropriate circumstances, recovery of punitive damages. Justice McFadden, writing for the Court in *Linscott,* specifically noted that a tort action would only lie for conduct independent of the underlying contract. *Linscott v. Rainier Natl. Life Ins. Co.,* 100 Idaho at 860, n. 6, 606 P.2d 958.