**Byron J. WILSON, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation, Defendant.**

**No. 91–CV–232–B.**

United States District Court, D. Wyoming.

June 2, 1992.

Robert N. Williams, Jackson, Wyo., for plaintiff.

George E. Powers, Jr., Godfrey & Sundahl, Cheyenne, Wyo., for defendant.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

BRIMMER, Chief Judge.

This matter comes before the Court on defendant's motion for partial summary judgment. The Court, having considered the materials in support of and in opposition to the motion, having considered the arguments of counsel, and being fully advised in the premises, FINDS and ORDERS as follows:

### Background

Plaintiff, a citizen of Wyoming, was a passenger in a car driven by Joy L. Gage. While traveling west on Wyoming Highway 22 on October 16, 1989, the Gage vehicle was struck by a car driven by Matthew Barber, an uninsured motorist. Plaintiff suffered injuries, and claims to have made repeated, unmet demands upon defendant for payment of insurance proceeds. Both plaintiff and Ms. Gage were insured by defendant with respect to uninsured motorist coverage and medical payment coverage, and those policies were in effect at the time of the accident. Plaintiff's claims are as follows: (1) bad faith and breach of implied covenants of good faith and fair dealing; (2) breach of contract; (3) breach of fiduciary duty; (4) unfair trade practices; (5) intentional infliction of emotional distress; (6) attorney fees; and (7) punitive damages.

Defendant admits that, subject to the terms, conditions and limits established by the policies, plaintiff was entitled to claim medical benefits up to $50,000 for medical expenses and to claim uninsured motorist benefits up to $100,000 under the Gage policy and up to $25,000 each on plaintiff's three policies. State Farm concedes that the uninsured motorist was 100 percent at

fault in causing the October 1989 accident. (Def.'s Reply Brief at 4).

Prior to January 14, 1991, defendant paid all of plaintiff's medical bills incurred as a result of the accident. However, field claims specialist Dave Haratyk testified in his deposition that defendant only paid 50% of plaintiff's medical bills resulting from plaintiff's neck surgery on January 14, 1991 as a result of Dr. Joern's and Dr. Engdahl's indication that a prior degenerative condition existed, and after Dr. Angelika I. Voelkel reported that plaintiff's neck problems were partially attributable to a preexisting condition and that a reasonable apportionment was 50 percent preexisting and 50 percent accident related. (Haratyk Depo. at 25, 180–181, and 222). Plaintiff contests the partial medical payment. The parties were also unable to reach a settlement of the plaintiff's uninsured motorist claim. Defendant moves for partial summary judgment on claims 1, 3, 4, 5, and 7. Plaintiff does not contest the granting of summary judgment on its fifth claim of intentional infliction of emotional distress.

### Standard of Review

The standard for issuance of summary judgment was well-stated recently by the Tenth Circuit:

In considering a party's motion for summary judgment, the court must examine all evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). Summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P 56(c). Under this rule, the initial burden is on the moving party to show the court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party's burden may be met when that party identifies those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553.

Once the moving party has met these requirements, the burden shifts to the party resisting the motion. The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party resisting the motion "may not rest upon the mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The mere existence of a scintilla of evidence will not avoid summary judgment; there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Id.* at 251, 106 S.Ct. at 2511.

*Manders v. Okl. ex rel. Dept. of Mental Health*, 875 F.2d 263, 265 (10th Cir.1989).

### Discussion

1. Bad faith claims

Defendant State Farm contends no bad faith exists as a matter of law on either a claim for uninsured motorist benefits where the insured has been unable to establish the extent of his damages, or a claim for medical payments when the claim for such benefits is fairly debatable. Both parties agree that the only issue left with respect to the uninsured motorist claim is the extent of injuries and damages sustained by Byron Wilson. (Def.'s Reply Brief at 4, Plf.'s Opposition Brief at 3). Defendant and plaintiff differ, however, concerning the amount of injury sustained by plaintiff, and the amount of plaintiff's income loss.

Plaintiff declares that the following facts exist concerning defendant's bad faith in refusing to pay 50% of the medical bills: plaintiff had a preexisting condition that, prior to the accident, was not symptomatic, and the accident caused the need for surgery and for giving up his work as an outfitter; and defendant had duties and it is a question of fact whether it acted in bad faith in light of those duties. Plaintiffs

allege that State Farm totally ignored the proofs submitted in behalf of Byron Wilson and unreasonably relied upon the report of Dr. Voelkel.

■ This Court assumes that Wyoming would recognize the tort of bad faith in the context of both an uninsured motorist claim and medical payment claim,[1] and that the Wyoming court would utilize the standard of "fairly debatable" in both contexts. Plaintiff has not suggested that the "fairly debatable" standard presented in *McCullough* should not apply here. *See McCullough v. Golden Rule*, 789 P.2d 855 (Wyo. 1990). Accordingly,

> [t]o show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.... The tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim, i.e., would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances.

*Id.* at 860, quoting *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368, 376–77 (1978). "The logical premise of the debatable (or arguable) standard is that if a realistic question of liability does exist, the insurance carrier is entitled to reasonably pursue that debate without exposure to a claim of violation of its duty of good faith and fair dealing." *McCullough*, 789 P.2d at 860.

### a. Bad faith in the medical payment context

■ The medical payments provision provides in relevant part that State Farm:

> will pay reasonable medical expenses, for **bodily injury** caused by accident, for services furnished within one year of the date of the accident. These expenses are for necessary medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and funeral services, eyeglasses, hearing aids and prosthetic devices.

(Def.'s Brief in Support of Motion for Partial Summary Judgment, App. 1 at Section II, Coverage C).

Plaintiff cannot show the absence of a reasonable basis for denying benefits under the medical payment provision. Haratyk's deposition testimony concerning his basis for reducing plaintiff's medical payments in August of 1990 indicated that he had the following information: (1) information from Dr. Engdahl (dated November 30, 1989) stating that he was unable to determine whether the degenerative change in plaintiff's cervical spine resulted from the accident or an "unrelated gradual degenerative change" (Haratyk Depo. at 153); (2) Dr. Joern's opinion that the accident resulted in the cervical herniation, but also indicating a possibility of degenerative problems (*Id.* at 154); and (3) Dr. Voelkel's report that 50 percent of plaintiff's injury was a result of the automobile accident and 50 percent was due to degenerative changes (*Id.* at 222). Haratyk testified that he took all the reports into consideration. (*Id.* at 181). Furthermore, Dr. Joern's full report of July 8, 1991, was not in existence at the time State Farm made the decision to pay 50 percent of the neck surgery.

Plaintiff contends that it was bad faith to rely on Voelkel's report and nothing else. A medical payment apportionment decision, made on the basis of a reputable doctor's judgment and uncontradicted by the facts available to State Farm, appears to be a logical conclusion. Upon viewing the facts in a light most favorable to the plaintiff; i.e., by assuming that State Farm relied only on Voelkel's report in making its decision to pay 50 percent of the neck surgery, plaintiff cannot show an absence of a reasonable basis for State Farm's denial of his claim.

---

**1.** The Wyoming Supreme Court in *McCullough, supra,* recognized a cause of action for bad faith in the context of a first party claim for medical benefits under an insurance contract. For purposes of this Order, this Court will assume the court would extend that holding to a claim for uninsured medical benefits.

### b. Bad faith in the uninsured motorist context

■ Likewise, plaintiff cannot show a lack of a reasonable basis for failure to settle the uninsured motorist claim. As stated above, both parties concede that the only issue left with respect to the uninsured motorist claim is the extent of injuries and damages sustained by Byron Wilson. The applicable uninsured motorist provision, provides in relevant part that the insurer "will pay damages for bodily injury an insured is *legally entitled to collect....*" (Def.'s Brief in Support of Motion for Partial Summary Judgment, App. 1 at Section 111, Coverage U) (emphasis provided). According to *Quick v. State Farm Mutual Insurance Co.*, 429 So.2d 1033, 1035 (Ala.1983), the term "legally entitled to recover as damages", which is nearly identical to the term in the State Farm policies in this case, has been interpreted to mean

> that the insured must be able to establish fault on the part of the uninsured motorist, which gives rise to damages, and must be able to prove the extent of those damages. In a direct action by the insured against the insurer, the insured has the burden of proving in this regard that the other motorist was uninsured, legally liable for damage to the insured, and the amount of this liability.

The parties have conceded that the other motorist was uninsured and legally liable for damage to the insured. The only remaining issue is the amount of liability.

On August 6, 1991, defendant offered to settle the uninsured motorist claim for $45,000. At that time, defendant had paid plaintiff approximately $5,000 as a wage advance, and $17,085.71 for accident related medical expenses. On September 9, 1991, the plaintiff's attorney demanded that the defendant pay the policy limits on the uninsured motorist coverage under all applicable policies. (Def. Brief in Support of Motion for Partial Summ. J. at 7). However, plaintiff himself has never determined that his injuries were in fact worth the policy limits of all available coverage, and he is not aware of any injury resulting

from defendant's handling of his claim for uninsured motorist benefits. (Wilson Depo. at 146–148). Furthermore, in plaintiff's demand for policy limits, he represented his loss of income as a result of the accident to be $2,735.50 per month. In March of 1990, plaintiff represented to defendant that his taxable income for 1989 was $52,000. (Wilson Depo. at 149–150). Wilson's 1989 federal income tax return showed plaintiff's adjusted gross income for 1989 to be $5,327.00. The discrepancy in figures justifies State Farm's reluctance to acquiesce to a full policy limit settlement.

Wilson has the burden of proving the amount of the liability, and until he does, the amount is "fairly debatable". *See Quick*, 429 So.2d 1033, 1035, citing *State Farm Mutual Automobile Insurance Co., Inc. v. Griffin*, 51 Ala.App. 426, 286 So.2d 302 (1973). State Farm is entitled to pursue that debate without being subjected to a claim of violation of the duty of good faith and fair dealing. Wilson has not yet proven the amount of his liability, as evidenced by discrepant income figures and plaintiff's unfamiliarity with the extent of his damages. The issue thus becomes a contractual one concerning how much the plaintiff is entitled to under the uninsured motorist provisions.

In conclusion, defendant is entitled to summary judgment on plaintiff's bad faith claims. The claims for medical payments are fairly debatable, and thus present contractual questions, as do the claims for uninsured motorist payments. Plaintiffs have failed to "make a showing sufficient to establish the existence of an element essential to [their] case", i.e., a showing that there was a lack of reasonable basis for State Farm's denial of benefits. *See Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

### 2. Fiduciary duty claim

■ Defendant is correct in its argument that it did not owe plaintiff a fiduciary duty with respect to the handling of the uninsured motorist claim or the medical claim. The *McCullough* case, which continues a "consistent thread" of Wyoming cases,

does not contemplate a fiduciary duty. *See McCullough, supra.* *McCullough* identifies the insurance contract as one of a special class of contracts containing a duty of good faith and fair dealing which arises from the contractual relationship. *Id.* at 858. As part of that duty, an insurer cannot unreasonably deny or delay payment, but an insurance company "cannot be said to be fiduciaries for their insureds in the strict meaning of the term." *White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 730 P.2d 1014, 1018 (1986); *see also Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565, 571 (1986).

Since no fiduciary duty exists between defendant and plaintiff, defendant is entitled to summary judgment on plaintiff's fiduciary duty claim.

### 3. Unfair trade practices claim

 As per plaintiff's unfair trade practices claim, the Wyoming Unfair Trade Practices Act does not provide for a private right of action. *See Julian v. New Hampshire Ins. Co.*, 694 F.Supp. 1530 (D.Wyo. 1988) (holding that the Act does not create a private action for third-party claims). Plaintiff contends that, since there has been no Wyoming Supreme Court decision that decides the private right of action pursuant to the Wyoming Unfair Trade Practices Act, this Court should look at other jurisdictions which support a private right of action under such acts. The Court, however, agrees with Judge Johnson in *Julian:* the superior reasoning is contained in "decisions unwilling to imply a private right of action" under their state's unfair trade practices. *See Id.* at 1533 ((citing decisions in which neither insureds nor third-party claimants were allowed a private cause of action): *Earth Scientists v. United States Fidelity & Guaranty Co.*, 619 F.Supp. 1465, 1468–71 (D.Kan.1985); *Farmers Group, Inc. v. Trimble*, 658 P.2d 1370, 1377–78 (Colo.App.1982), *aff'd by*, 691 P.2d 1138 (Colo.1984); *Morris v. American Family Mutual Ins. Co.*, 386 N.W.2d 233, 236–38 (Minn.1986)); *see also White v. Unigard*, 730 P.2d at 1021 (no private right of action under the state unfair trade practices act for first-party claims). Defendant's motion for summary judgment on this claim is thereby granted.

### 4. Punitive damages claim

 Since plaintiff cannot maintain a suit for bad faith on the facts before this Court, plaintiff has no tort action for which punitive damages can be awarded.

THEREFORE IT IS

ORDERED that defendant's motion for partial summary judgment on plaintiff's claims of bad faith and breach of the implied covenants of good faith and fair dealing, breach of fiduciary duty, unfair trade practices, intentional infliction of emotional distress, and punitive damages be, and the same hereby is, GRANTED.